### FERGUSON et al. v. DENT et al.

*(Circuit Court, W. D. Tennessee. April 21, 1891.)*

1. **COSTS—ATTORNEY'S FEES ON DEPOSITIONS.**
   On taxation of costs in an equity cause in the federal court the fee of $2.50 on each deposition taken and admitted in evidence on the hearing before the court is taxable under section 824, Rev. St., in favor of the party recovering costs; and it is immaterial before what officer such deposition was taken, whether examiner, master, or otherwise.

2. **SAME—PRINTED RECORD.**
   Where the record is printed in the circuit court, and paid for by a receiver under order of the court from funds in his hands, and such printed record is used on appeal in the supreme court without further expense to the parties, *held*, under the circumstances of this case, that the expense of printing the record should be taxed in favor of the party recovering costs.

3. **SAME—RECEIVER'S COMPENSATION.**
   Where a receiver is appointed at the instance of the plaintiff, and the ultimate decision of the case upon appeal, reversing the decree below, is adverse to him, the receiver's commissions, paid out of the funds in his hands, will not be taxed as costs against the plaintiff, his appointment being regular and properly made in the case. That the plaintiff does not finally succeed in the litigation is not the criterion in determining the propriety, necessity, or legality of a receiver's appointment.

In Equity. Motion to retax costs.

*T. B. Edgington,* for plaintiffs.

*Poston & Poston* and *Turley & Wright,* for defendants.

HAMMOND, J. In this equity cause a decree was originally rendered for the plaintiffs on their bill and for costs. An appeal was taken, and the case was reversed in the supreme court, (10 Sup. Ct. Rep. 13,) with directions to dismiss the bill and render judgment for costs against the plaintiffs and the surety on their prosecution bonds. The costs claimed for defendants are as follows:

| | |
|---|---:|
| Clerk's fees, paid by the receiver, | $ 391 40 |
| Marshal's " " " " " | 208 26 |
| Examiner's " " " " | 8 20 |
| Master's " " " " " on printing record, | 500 00 |
| Expense " " " " " " " " | 829 62 |
| Receiver's commission, " " | 2,731 60 |
| Docket fee on final hearing, | 20 00 |
| Docket " " 98 depositions, | 245 00 |
| Costs taxed in the supreme court, | 135 15 |
| Clerk's fees since the appeal, | 49 75 |
| Marshal's " " " " | 53 54 |
| Costs paid by defendant on Walker's deposition, | 7 00 |
| Costs of transcript in *Re Ferguson,* bankrupt, | 6 00 |
| Making in all claimed by defendants, | $5,185 52 |
| Of which the clerk has so taxed all but receiver's fee, | $2,731 60 |
| Leaving as the clerk's taxation, | $2,453 92 |

To this taxation the plaintiffs make two objections and the defendants one, as follows:

1. A docket fee of $2.50 has been taxed on each deposition "taken and admitted in evidence," amounting in all to $245 on the 98 depositions on file. Of these depositions, 14 were taken outside this district; 71 before examiners at Memphis, where the court is held; and the remaining 13 in this city, before officers other than an examiner or master. For the plaintiffs, who are adjudged to pay costs, it is contended that these fees are not taxable upon depositions taken within the jurisdiction of the court before one of its examiners, and this objection goes to the above 71 depositions so taken, but does not apply to the other 27. The record in this case shows that as a matter of fact each of the depositions so taken before the master or an examiner were by written interrogatories and written answers, just as depositions are usually taken, and not "in narrative form," as insisted in the brief of counsel. The argument against the taxation of these fees is that the testimony so taken is simply the examination of the witness, and not his deposition, and that, therefore, such fee is not taxable, since the statute applies only to "depositions." It is as follows: "For each deposition taken and admitted as evidence in a cause, two dollars and fifty cents." Rev. St. § 824. Section 862 of the Revised Statutes provides that "the mode of taking proof in causes of equity and of admiralty and maritime jurisdiction shall be according to rules now or hereafter prescribed by the supreme court, except as herein specially provided." And the sections of the revision immediately following prescribe the mode of taking depositions *de bene esse* "in any civil cause depending in a circuit or district court," (Rev. St. §§ 863–865,) and under a *dedimus potestatem,* "according to common usage;" and *in perpetuam rei memoriam,* "according to the usages of chancery," (Id. §§ 866–870.) The original supreme court equity rule No. 67 prescribes how "commissions to take testimony may be taken out * * * upon interrogatories filed by the party taking out the same. * * * If the parties shall so agree, the testimony may be taken upon oral interrogatories by the parties or their agents without filing any written interrogatories." This rule was amended at the December term, 1854, by giving the judge of the court authority "to vest in the clerk of said court general power to name commissioners to take testimony." Later, at the December term of 1861, the rule was further amended by providing that "either party may give notice to the other that he desires the evidence to be adduced in the case to be taken orally, and thereupon all the witnesses to be examined shall be examined before one of the examiners of the court; * * * and such examination shall take place in the presence of the parties or their agents, by their counsel or solicitors, * * * and which shall be conducted as near as may be in the mode now used in common-law courts. The depositions taken upon such oral examination shall be taken down in writing by the examiner in the form of narrative, unless he determines the examination shall be by question and answer in special instances. * * * When the examination of witnesses before the examiner is concluded, the original deposition, authenticated

by the signature of the examiner, shall be transmitted by him to the clerk of the court. · * * * Testimony may be taken on commission in the usual way by interrogatories and cross-interrogatories." And, finally, by a still subsequent amendment at. the December term, 1869, of the supreme court, it was provided that, "where the evidence to be adduced in a cause is to be taken orally, * * * the court may, on motion of either party, assign a time within which each party shall take his evidence." The statutes regulating the taking of the written testimony of witnesses nowhere make any distinction between examinations and depositions; nor does this equity rule 67, as originally promulgated, use either word, but speaks, as does the first amendment to it, of the proof simply as "testimony." Its principal amendment, made in 1861, provides that "testimony" may be "taken orally," how the "examination" shall be conducted, and that the "depositions taken upon such oral examination shall be taken down in writing" in the manner indicated, and that at the close of the "examination" the "original deposition" shall be filed as provided; while in the last amendment the proof is only referred to as "evidence" in a cause "taken orally." This rule nowhere calls the proof taken under its provisions an "examination," and this word, as used in it, always has reference to the taking of proof, and never to the testimony after it has been given by the witness and reduced to writing. Equity rules 68 and 69 likewise refer solely to the taking of "testimony" in a cause "by deposition" under the statute, while rule 70, governing the taking of statutory depositions *de bene esse*, provides for the appointment of commissioners "to take the examination" upon notice of the time and place of taking the "testimony," and such depositions are conceded to be taxable with the attorney's fee. The general admiralty rules of the supreme court prescribe a reference to commissioners, who are granted all the powers "usually given to or exercised by masters in chancery in reference to them," (Sup. Ct. Admiralty Rule 44,) and provides further for the taking of new proof on appeal "by deposition" before a commissioner or other officer "authorized to take depositions" under the statute "upon an oral examination and cross-examination," unless the court "upon motion allow a commission to issue to take such deposition upon written interrogatories and cross-interrogatories," prescribing particularly the mode to be pursued "when such deposition shall be taken by oral examination." Admiralty Rules 49, 50, 52. In the rules of our circuit court (Ed. 1864) the written testimony of witnesses in cases at law and in equity is spoken of only as "depositions." Rules 13, 14. Therefore, upon a careful inspection of all these rules, as well as of the statutes, there does not seem to be any such distinction between depositions and examinations as counsel here insists upon.

Nor does the word "deposition," as used in this fee statute; (Rev. St. § 824, *supra*,) appear by the decisions of the courts to be confined in its meaning or application by any such limitations, or by the weight of authority, probably, restricted by any limitations whatever. In *Stimpson* v. *Brooks*, 3 Blatchf. 456,—an equity case, decided by Judge BETTS in 1856, and the first decision, I think, under this clause of the statute,

—the word "deposition" was defined to be "a generic expression, embracing all written evidence verified by oath. * * * A 'deposition' is evidence given by a witness under interrogatories, oral or written, and usually written down by an official person." In that case it was ruled that the docket fee of $2.50 was not taxable upon *ex parte* affidavits used on a motion for preliminary injunction. And in *The Sallie P. Linderman*, 22 Fed. Rep. 557, 558, Judge Nixon, in defining "deposition," as used in this statute, says:

"In its strict and appropriate sense it is limited to the written testimony of a witness given in the course of a judicial proceeding, either at law or in equity."

The only case cited by counsel against the taxation here is *Factory* v. *Corning*, 7 Blatchf. 16, and the precise question before the court there was whether the fee was taxable upon oral testimony taken before the master "on the accounting" before him, and evidently after the final decree settling the rights of the parties to the cause. Judge Nelson in disallowing the taxation says the statute "relates to testimony taken out of court, under authority which will entitle it to be read as evidence in court, and has no relation to oral testimony taken in court or before a master. It applies in cases at common law where depositions are given in evidence upon the trial, and in suits in equity where depositions are read at the hearing." The decision obviously was made not so much upon any distinction between depositions taken before one officer, rather than another, as upon the idea that the statute confines these, as it does the other docket fee mentioned in it, to depositions used "on a trial before a jury," or "on a final hearing in equity or admiralty." And other cases seem to have held the same doctrine, as will be seen hereafter, though the statute as to these deposition docket fees contains no such limitation as to the time when or purpose for which they are "admitted in evidence in a cause," or "in the cause," as originally enacted. 10 St. U. S. 161. While in *Dedekam* v. *Vose*, 3 Blatchf. 77, it was held that upon the trial of an admiralty appeal in the circuit court these fees were not taxable there upon depositions read from the district court transcript, (in which court they were taxable,) yet, upon depositions taken for the circuit court after the appeal, they were taxable under the statute. In *Jerman* v. *Stewart*, 12 Fed. Rep. 271, where depositions taken in the state court were used by agreement in a case at law here, I held the fee taxable because the statute "does not mean that the deposition shall be formally taken, and the fees allowed only for such as are formally taken, but for those that are taken in any way and admitted in evidence. The use of the deposition on the trial is what entitles the attorney to the fee." *Archer* v. *Insurance Co.*, 31 Fed. Rep. 660; *Wooster* v. *Handy*, 23 Fed. Rep. 49, 59, 63. In the admiralty cause of *The Sallie P. Linderman, supra*, there had been a reference to a commissioner, upon which 21 depositions were taken and returned to the court with the commissioner's report, and "admitted in evidence by the judge in deciding the cause." The motion to retax costs was overruled, and the $2.50 on each deposition was allowed to proctor for the prevailing party. In *Amer-*

*ican, etc.,* Co. v. *Sheldon,* 28 Fed. Rep. 217, a cause in equity, Judge WHEELER, while holding that depositions taken in one case and used by agreement in others could be taxed but once, ruled that they were taxable in the case in which they were in fact taken; and in *Cahn* v. *Qung Wah Lung,* Id. 396, the case was dismissed "without a submission or hearing," and docket fees on the depositions were disallowed solely on the ground that they were not "admitted in evidence." To the same effect is *Cahn* v. *Monroe,* 29 Fed. Rep. 675, where, in a case at law, the court, after the jury was sworn, directed a verdict for defendant on the opening statement of plaintiff's attorney, before the introduction of any proof, and accordingly disallowed these fees. And in *Gorse* v. *Parker,* 36 Fed. Rep. 840, such was the ruling of the court on the taxation of costs, because the successful party to the suit conducted his own litigation without the aid of counsel, and could not, therefore, be entitled to attorney's docket fees under the statute.

The question whether these attorney's fees can be taxed upon depositions unless admitted in evidence "on a trial" at law or "on a final hearing" in equity and admiralty is not here presented for adjudication, as all these depositions were used in proof at the hearing, and taken for that purpose, there being no reference or collateral proceedings in the cause in which or for which any of this testimony was taken. The following cases, in which such fees were disallowed upon that ground, do not, therefore, apply here: *Strauss* v. *Meyer,* 22 Fed. Rep. 467, where the depositions were used in part upon motion for preliminary injunction, and in part taken and used on reference to the master to ascertain damages; *Spill* v. *Celluloid Manuf'g Co.,* 28 Fed. Rep. 870, where certain depositions were taken to be used upon such reference, and others in a collateral proceeding in the cause for contempt of court; *Dalzell* v. *The Daniel Kaine,* 31 Fed. Rep. 747, where the testimony was taken before a commissioner appointed to make distribution of a fund in admiralty; *Central Trust Co.* v. *Wabash, etc., R. Co.,* 32 Fed. Rep. 684, and *Missouri Pac. R. Co.* v. *Texas, etc., R. Co.,* 38 Fed. Rep. 775, 776, where, in suits for the foreclosure of a railroad mortgage, intervenors for damages caused by the receiver made proof by depositions taken and used before the master upon a reference to him. In *Tuck* v. *Olds,* 29 Fed. Rep. 883, such fees were disallowed by Judge SEVERENS in an equity case; but the report does not show whether the depositions were taken to be used on the "final hearing" or otherwise in the cause. The court, in the opinion, says:

"It is probable that the statutory provision was intended to provide for compensation in cases where depositions are taken *bene esse,* and in such other cases, not within the scope of the ordinary method of taking testimony in cases pending in the federal courts, as may arise."

But this decision was expressly overruled in *Ingham* v. *Pierce,* 37 Fed. Rep. 647, by an oral opinion of Judge JACKSON, concurred in by Judge SEVERENS, because the practice under a long-established interpretation of the statute throughout this circuit has been to allow such fees; the 23 depositions in that case having been taken before notaries public under

a stipulation "that they should be treated as of the same force and effect as if taken under the sixty-seventh rule, before regularly appointed special examiners." In *Jerman* v. *Stewart,* 12 Fed. Rep. 271, 278, cited *supra,* this court held such fees taxable on depositions used on the trial, though taken elsewhere, because "this fee is not a part of the cost of taking the deposition, but, like the docket fee, is an allowance to the attorney as taxable costs for his professional services in the case." And, now, again, upon this review of all the cases I have been able to find construing this provision of the statute, I still adhere to my opinion in *Jerman* v. *Stewart,* and cannot agree with any *dicta* in the other cases cited tending to establish the principle that the mode or manner of taking the deposition, or the officer before whom it is taken, is to be treated as a criterion in determining the allowance of the $2.50 fee to the attorney, when the deposition is in fact admitted in evidence. The statute itself contains no limitation or condition. If it be urged that so broad a construction would allow the fees on depositions taken to be used on references, motions for rehearing, or other proceedings in a cause than the final hearing, it is sufficient to say that that question will be further examined when presented here for adjudication. The practice in this district, however, I may add, has always been to tax such fees upon all depositions in any way used in the case. The testimony here is all written, not in narrative, but by question and answer, counsel in every instance propounding the interrogatories to the witness through the officer in the usual way. The testimony of each witness is upon its face called a "deposition;" and the orders appointing the examiners empowered one of them "to take depositions and proofs in the cause," and the other "to take the testimony of the witnesses," under the sixty-seventh rule in equity. The motion to retax or disallow these fees is therefore denied.

2. At the hearing of this cause before the late Mr. Justice MATHEWS and Judge HAMMOND the following decree was made by the court:

"On good cause shown * * * the master in chancery is hereby ordered and directed to have the record in this cause printed, consisting of the pleadings and proof in the cause. He will observe and follow the form and method of printing the records in cases of appeals or writs of error to the supreme court of the United States, so that copies of the printed record can be used in case of appeal in the cause. It is further ordered, adjudged, and decreed that W. A. Wheatly pay the costs of said printing out of any funds in his hands as receiver, or hereafter to come into his hands as such. Said master in chancery will cause as many as forty copies of said record to be printed, to be distributed under the direction of the court. * * * It is further ordered that the master prepare and print with the record an index of it."

Under this order 40 copies of the record were printed and indexed, making a volume of 836 pages in the exact style of type, paper, size, etc., as the records on appeal are printed in the supreme court, and the expense of the printing, paper, and binding, $829.62, with the master's fee allowed in the case, $500, in all $1,329.62, was paid by the receiver, and has been taxed by the clerk as costs against plaintiffs, to which they object by this motion. After this a decree was rendered in this

court for complainants, and defendants took the case by appeal to the supreme court. Of the 40 printed copies 15 were distributed among counsel and the judges of this court, and 25 copies were reserved, to be sent to the clerk of the supreme court with the appeal, the printed record itself being certified, together with a transcript of the subsequent proceedings in the cause. The master's fee here only amounted to about two-thirds of what the clerk of the supreme court would have received for his services in having the manuscript record printed at Washington, and the printing was done here at about four-fifths of what it would have cost there. By an order made in the supreme court, (*Dent* v. *Ferguson*, 131 U. S. 397, 401, 9 Sup. Ct. Rep. 791,) these printed copies were used there without further expense. No fees were paid the clerk here for copying this portion of the record in the transcript for the supreme court. The actual saving, therefore, in the proper costs of this appeal by the printing of this record here was about the sum of $1,300; that is, if the record had not been so printed, and the defendants had taken the case to the supreme court by appeal in the usual way, the necessary expense would have been at least $2,600, instead of $1,329.62, the amount paid by the receiver, and which would have been recoverable as costs against the plaintiffs.

The statutes prescribe the fee of the clerk for making such copy of a record, (Rev. St. § 828,) and that, upon appeal, a transcript, etc., "shall be transmitted to the supreme court." Rev. St. § 698. Rule 8 of that court requires that "the clerk of the court to which any writ of error may be directed shall make return of same by transmitting a true copy of the record and of the assignment of errors, and of all the proceedings in the case, under his hand and the seal of the court;" and its rule 10 provides for the printing of records on appeal, (25 copies in each case) the fees for which are prescribed by rule 24, made under the authority of an act of congress approved March 3, 1883. Rule 24 of the supreme court also contains the provision that "in cases of reversal of any judgment or decree in this court costs shall be allowed to the plaintiff in error or appellant unless otherwise ordered by the court;" and rule 10 further provides that "in case of reversal, affirmance, or dismissal, with costs, the amount of the cost of printing the record and of the clerk's fee shall be taxed against the party against whom costs are given." Section 983 of the Revised Statutes governing costs in the federal courts is as follows:

"The bill of fees of the clerk, marshal, and attorney, and the amount paid printers and witnesses, and lawful fees for exemplifications and copies of papers necessarily obtained for use on trials, in cases where by law costs are recoverable in favor of the prevailing party, shall be taxed by a judge or clerk of the court, and be included in and form a portion of a judgment or decree against the losing party. Such taxed bills shall be filed with the papers in the cause."

The final decree of the supreme court in this case was "that the said defendants, Geo. G. Dent *et al.*, recover against the said Isaac A. Ferguson *et al.* $135.15 for their costs herein expended, and have execution

therefor;" and that the cause be remanded to this court, "with direc-
tion to dismiss the bill with costs;" the decree here upon the mandate
being that defendants recover from plaintiffs "the costs of the United
States supreme court, together with the costs of this court." The original
decree here, from which the appeal was taken, gave judgment against
defendants for "all the costs of this cause, including the costs which
plaintiffs have already paid or which have been or may be paid through
the receiver herein, or which otherwise have accrued in the case;" and
this decree further provided that "out of the funds in the hands of the
receiver the officers of the court, including the examiner, for taking tes-
timony, and the master, shall be paid their legal fees not already paid
by the parties themselves; but this shall not include docket and depo-
sition fees taxed to counsel for plaintiffs until the other officers are first
paid, but the same shall afterwards be paid." These latter were not,
however, paid by the receiver, though counsel for plaintiffs, while the
case was pending in the supreme court, by petition filed here, asked a
decree for their payment, which was not granted; but substantially all
the other costs up to the date of the appeal were paid by him. While
it may be doubtful if this sum for printing the record would have been
taxable as costs in the event that no appeal had been taken, in the ab-
sence of any rule of this court authorizing such printing, such as exists
in other districts in the circuit, (*Jordan* v. *Woollen Co.*, 3 Cliff. 239; *Den-
nis* v. *Eddy*, 12 Blatchf. 195; *Spaulding* v. *Tucker*, 2 Sawy. 50,) yet, un-
der the circumstances of this case, it is clear it should now be so taxed.
The very terms of the order under which the record was printed show
that it was the intention of the court that the printed record should be
used on the appeal in case one was taken. Counsel for plaintiffs insists
that this order was made "by the consent and approval of all parties at
the time;" but in its form it was not a consent decree, and there is no
agreement whatever in the record pertaining to the matter, and nothing
which can properly be considered, except the order itself. Besides, had
the order been one made by consent upon its face, with nothing more,
that fact simply would not affect the rights of the parties on a question
of taxation of costs, probably. It is also urged that because the re-
ceiver was directed by the court to pay the expense of printing the rec-
ord, without any reservation as to who should ultimately bear the bur-
den of the expenditure, it was an adjudication by the court that the
amount was to be considered simply as a part of the receiver's expenses,
not subsequently taxable as costs in any event. It will be observed that
the order upon the receiver only embraces "the costs of said printing,"
which might not include the master's fee which the receiver was directed
by a subsequent order to pay; besides, it was the costs of the printing,
not cost or expense which is named in the order, if stress is to be placed
upon the word. But if the mere fact that the court ordered this expense
to be paid by the receiver was such an adjudication as contended for,
then the final decree in the cause, which directed him to pay all the
unpaid fees of the court officers, (which, in the aggregate, were substan-
tially all the costs accrued in the cause at that time,) was equally an ad-

judication that all those items were to be thus finally settled; and the result would be that the judgment for costs in this voluminous record would be in effect only for such costs as have accrued here since the appeal was taken, together with the costs of the supreme court. Of course a ruling so emasculating the costs of a case will not be made except upon the plainest reasons apparent in the record, and upon well-established rules of law. "Where a party is entitled to his costs, but it has not been decided who ought ultimately to bear them, payment is often directed to be made out of a fund in court, or by one of the parties to the proceeding, and without prejudice to the question how the same shall ultimately be borne. The absence, however, of these words or words of a like meaning from an order directing payment of costs out of a fund in court does not necessarily imply that the court has decided that the fund out of which the costs are paid is that which must ultimately bear them." 2 Daniell, Ch. Pr. 1409, 1410, 1433. I do not think any of these orders directing the payment of fees, costs, etc., by the receiver were at all intended to adjudge any question of costs whatever in the case, nor that their legal effect is such an adjudication. Questions of costs ordinarily do not properly arise before the taxation, and are not determined by a court in advance, without allowing parties an opportunity to be heard. The reasons urged by plaintiffs to the correctness of the clerk's taxation of this item are not, therefore, sufficient, in my judgment, to support their motion to retax or disallow the same, and it is accordingly overruled.

3. At the commencement of this litigation a receiver was appointed at the instance of the plaintiffs. His settlement with the court has been accepted as correct by the parties as to the compensation retained by him and otherwise. From his reports it appears that he has been paid for his services as receiver the sum of $2,731.60, being 10 per cent. commissions on the gross collections of rent. The defendants claim that this amount should be taxed as costs against the plaintiffs, but the clerk did not so tax it, and the defendants by their motion ask the allowance of this item in their favor. The bill was originally filed to obtain possession of certain valuable real estate in Memphis, to cancel the muniments of title in defendants as clouds upon that of plaintiffs, and establish the title therein to themselves. The receiver, in his settlement, has paid over to defendants the balance of the funds in his hands. In support of defendants' motion counsel cite and rely upon two cases. In one—*Lockhart* v. *Gee*, 3 Tenn. Ch. 332—the bill was filed to enforce a vendor's lien, and a receiver was appointed to collect the rents on the land up to the date of its sale, on the apprehension by plaintiff and the court that the proceeds of such sale would not be sufficient to satisfy the lien. Under the Tennessee decisions, however, such a vendor has right to satisfaction only out of the land, and is never entitled to a receiver to collect rents. Per COOPER, J.:

"Having no right to a receiver, the complainant is, of course, liable to the defendants for all the consequences of having had one appointed. The costs of the receivership, including the compensation of the receiver, must therefore be paid by the complainant "

That is, while the plaintiff was entitled to recover in the action, he was not in law, at any stage of the proceeding, entitled to a receiver upon the face of his bill, the appointment being erroneous of itself, without reference to the ultimate rights of the parties to the suit, or their determination by the court; in other words, the court in that case had no jurisdiction to appoint a receiver. The case of *French* v. *Gifford*, 30 Iowa, 148, was a suit by certain stockholders of a savings bank against its officers and directors, and the receiver was appointed at the time the bill was filed, motion was promptly made to discharge him, which the court below denied, and from that decree alone this appeal was taken, leaving the case pending upon all other questions and upon its merits. It was held in the appellate court, both upon principle and under the provisions of the Iowa Code, that the receiver's appointment was erroneous; that the bill upon its face showed that plaintiffs were not and could not be entitled to a receiver; and the action of the court below was reversed. This case is stated because necessary to a proper understanding of what was really decided in *French* v. *Gifford*, 31 Iowa, 428, the only other authority cited for defendants here. From a taxation of the receiver's costs this second appeal was taken, and it was ruled that of his compensation one-third should be paid out of the funds in his hands, and the other two-thirds taxed as costs against the plaintiffs in the action. In the decision, and in answer to the argument, supported by authority, that receivers were invariably paid out of the fund, MILLER, J., speaking for the court, says:

"Upon an examination of the cases it will be found that in every case there was no question made as to the legality or propriety of the appointment of the receiver; that in each case the receiver closed up the business, and settled his accounts in pursuance of his appointment. * * * We think it would be an unjust and inequitable rule if in all cases the receiver should be entitled to his compensation from the fund in his hands, without reference to the legality of his appointment."

Subsequently, in a case whose facts strikingly resemble those of the one at bar, like questions again came before that court in *Radford* v. *Folsom*, 55 Iowa, 276, 7 N. W. Rep. 604, in which *French* v. *Gifford*, *supra*, was urged upon the court. It was an action to quiet title and recover possession of lands, and a receiver was appointed to collect rents, pay taxes, and discharge incumbrances. Plaintiff claimed title under a deed which the court held to be a mortgage, finding a large sum due plaintiff, and granting defendants the right to redeem the land upon paying same, title to vest in plaintiff in case of failure to so pay. The receiver, as here, made settlement with the court, paying balance in his hands over to defendants. The opinion holding the appointment of the receiver proper uses this language:

"The mere fact that the court found, and so decreed, that the plaintiff and defendants sustained the relations of mortgagee and mortgagors, does not demand a different conclusion. * * * The receiver was duly appointed in the exercise of the lawful jurisdiction of the court," and "discharged the duties presented until the case was finally decided, and the rights of the parties settled, and an order made disposing of the balance of the funds in the receiv-

er's hands. * * * It is believed that the authorities uniformly hold that when no question is made as to the legality and propriety of the appointment of the receiver, and he has closed up the business in pursuance of his appointment, his compensation should be paid from the funds in his hands."

In *Beckwith* v. *Carroll*, 56 Ala. 12, (cited for plaintiffs,) the receiver was appointed to gather and dispose of crops from land leased to partners, (the original parties plaintiff and defendant in the cause,) and the owner of the land by petition subsequently became a complainant. The fund was insufficient to pay the rent; but the receiver's compensation was ordered to be paid out of it, and the land-owner appealed. Held no error, MANNING, J., in the opinion of the court, saying:

"When it becomes the duty of a court of equity to take property under its own charge through a receiver, the property becomes chargeable with the necessary expense incurred in taking care of and saving it, including the allowance to the receiver for his services."

Such is unquestionably the well-settled law, and a citation of authority in support of it would seem to be needless. No case to the contrary has been cited by counsel, nor any in support of their position, except those heretofore noticed; and it is believed that not one decision can be found holding that the proper expenses of a receiver or his compensation shall be taxed as costs against the losing party where his appointment was proper and legal, and made by a court in the exercise of its undoubted jurisdiction, and where the fund in his hands is sufficient to pay same. Nor does the legality or propriety of his appointment depend at all upon the event of the suit; because it is ultimately determined that plaintiff in an action is not entitled to recover or to the relief he seeks, *non constat* that the action of the court or the conduct of the parties in the appointment of a receiver has been irregular, improper, erroneous, or unnecessary. But, under the circumstances of this case, the defendants ought not, in any event, to be held entitled to the relief they seek by this motion, and a proper and sound exercise of the discretion inherent in a court of equity over the matter of costs should not aid them. The property in dispute at the institution of this suit was overburdened with back taxes in the sum of nearly $7,000 due the city, county, and state. Suits for the sale of much of it for such taxes were pending in the state courts. Its sanitary condition was extremely bad, and proceedings for the condemnation of portions of it were on that account threatened, and, perhaps, in some instances already commenced; and there was great danger of the property being wholly lost to whomever it should be eventually adjudged to belong, unless taken in charge of and protected and preserved by the court. The services of the receiver have been in the highest degree satisfactory to the court and the parties. He has kept the property intact, put it in as good sanitary condition as was possible, kept it insured and repaired, paid off or discharged all the past due and current taxes, and paid most of the costs of this expensive litigation, besides paying the defendants (including amounts to their counsel) some $6,000 or more; and upon the argument it was stated at the bar that this receiver is now in possession of the

property, as the agent of defendants, under the same rate of compensation allowed him as receiver. The motion of defendants is therefore denied, and the taxation of the clerk is in all respects affirmed.

The reasoning upon which the foregoing conclusions have been reached render it unnecessary to consider the question discussed at the hearing, whether the provisions of section 983, Rev. St., quoted heretofore in this opinion, are an inflexible limitation upon the federal equity courts in the matter of cost taxation. *Trustees* v. *Greenough,* 105 U. S. 527; *Banking Co.* v. *Pettus,* 113 U. S. 116, 5 Sup. Ct. Rep. 387; *Lottery Co.* v. *Clark,* 16 Fed. Rep. 20; *Coy* v. *Perkins,* 13 Fed. Rep. 111, and notes; *Spaulding* v. *Tucker,* 2 Sawy. 50; *Gunther* v. *Insurance Co.,* 10 Fed. Rep. 830. Nor, for the same reason, has it been deemed material for the purposes of this case to discuss the well-recognized distinction of costs "as between party and party," and those as between "party and solicitor."

JACKSON, J., concurs.