76 N. W. Rep. 227.)

---

HENRY W. K. CUTTER, *et al vs.* JAMES R. POLLOCK, *et al.*

Opinion filed June 3rd, 1898.

**Receiver's Expenses—Apportionment.**

> Plaintiffs instituted an action against defendants to have certain property, on which defendants held liens, declared a trust fund for the benefit of all the creditors of the owner thereof. In this action a receiver of the property was appointed, on the application of the plaintiffs. The plaintffs were unsuccessful, it being held that, as a matter of law, they had no interest in the property, on their own theory of the facts; and the receiver was directed to turn over to the defendants the proceeds of the property, after deducting therefrom his fees and and expenses. *Held*, that it was proper for the court to adjudge that the defendants should recover judgment against the plaintiffs for three-fifths of the amount so deducted for the expenses of the receivership, from the property on which the defendants held liens; it appearing that at the time the receiver was appointed their security was ample, and that, after adding the amount of such judgment in their favor to the sum turned over to them by the receiver, they would still fail to receive the full amount of their claims.

Appeal from District Court, Cass County; *McConnell*, J.

Action by Henry W. K. Cutter and another against James R.

Pollock and another.  Defendants had judgment, and plaintiffs appeal.

Affirmed.

*Newman, Spalding & Stambaugh*, for appellants.
*Pollock & Scott*, (*Smith Stimmel*, of counsel,) for respondents.

CORLISS, C. J.   On the former appeal we settled the merits of this action.   4 N. D. 205, 59 N. W. Rep. 1062.   On this appeal we have to deal with the fees and expenses of the receiver appointed in the action.   There is no controversy touching their amount.   The sole inquiry is whether, after the fund on which the defendants held a lien had been depleted by the payment thereout of such fees and expenses, the defendants should be allowed a judgment against the plaintiffs, reimbursing them in part for their loss.   The object of the action was to have certain chattel mortgages construed as constituting an assignment for the benefit of creditors, with preferences, and for that reason to have the preferences thereby created adjudged void under the statute, and the property administered as a trust fund for the benefit of all the creditors · of the mortgagors.   We held that the action would not lie (4 N. D. 205, 59 N. W. Rep. 1062;) and this holding involved the conclusion that the complaint did not state a cause of action, and that the case was one in which a receivership was improper.   Certainly no court should appoint a receiver of a defendant's property, in which the plaintiff claims an interest, when the complaint itself shows that the plaintiff has no interest therein, and that his action is without foundation.   The District Court held, on the settlement of the receiver's accounts, that the defendants should recover of the plaintiffs judgment for three-fifths of the fees and expenses allowed the receiver out of the property on which alone the defendants held liens, and in which the plaintiffs had no interest whatever.   We discover in this no abuse of discretion.   Nor are we able to agree with counsel for plaintiffs that the court had no power to so adjust the burden of the expense of the receivership that a portion of it should

ultimately fall on those who, without right, secured the appointment of the receiver, and thereby caused this unnecessary expense. When the protection of the receiver himself is alone involved, the courts will ordinarily pay little heed to the injustice. which results to the successful suitor because his own property, which constitutes the fund, is in the first instance charged with the burden of the receiver's fees and expenses. This certainly should be the case when the complaint states a cause of action, and the action is one in which a receiver can be appointed. Neither the court nor the receiver can anticipate that the plaintiff will be defeated upon the merits on the trial of the issues of fact in the case. We intimated when this cause was before us on the merits that we regarded the better rule to be that the receiver should not ordinarily be compelled to run the hazard of the result of the litigation. See page 216 of 4 N. D., and page 1064 of 59 N. W. Rep. See, also, *Heise* v. *Starr*, 44 Ill. App. 406, 409; *Hopfensaek* v. *Hopfensaek*, 61 How. Prac. 498; *Beckwith* v. *Carroll*, 56 Ala. 12; *Cattle Co.* v. *Bindle*, (Tex. Civ. App.) 32 S. W. Rep. 582; *Radford* v. *Folsom*, (Iowa,) 7 N. W. Rep. 604, 609. And while there are cases which hold that he must look for pay and reimbursement to the party at whose instance he was appointed, when his appointment is illegal (see *Couper* v. *Shirley*, 21 C. C. A. 288, 75 Fed. Rep. 168, 171, and cases cited in 4 N. D. 216, 59 N. W. Rep. 1064,) yet even in such a case the defendant should not be allowed to defeat the receiver's right to look to the fund unless such defendant attacks the receivership itself by every remedy which the law affords. If he acquiesces therein, he should not, as against the receiver, be permitted to claim that the fund should be turned back to him undiminished by the receiver's charges, when, after a trial on the merits, he has established his title to such fund as against the plaintiff. But the case is different when the question arises between the parties to the action. The court will take care of its own officers, even when the result is a hardship to one of the parties. But it will not perpetuate this necessary injustice by adjudging that, even between the

parties themselves, the one who is innocent, and who has been compelled to pay the receiver's fees and expenses out of his own property, shall not be permitted to recover from the plaintiff in the action itself the moneys he (the defendant) has been so compelled to disburse by reason of the oppressive and illegal action of his adversary. Counsel for plaintiffs in this case concede that when the order appointing the receiver is illegal (as when, for instance, the case is one in which it is improper to appoint a receiver at all) the court may require the defeated suitor to reimburse his antagonist, whose property has been taken to pay the expenses of the receivership. But they contend that the case is different where the plaintiff is defeated on the merits, provided the suit is one in which a receivership is proper, and the complaint states a good cause of action. The decision of the court in *Ferguson* v. *Dent*, 46 Fed. Rep. 96, leans quite strongly in favor of this view. But an examination of the opinion discloses the fact that the decision really turned upon the peculiar features of the case, and not upon the general doctrine enunciated in the opinion. The reasoning of the court is shorn of much of its force because of the fact that 'the court does not seem to discriminate between a case where the receiver is insisting that he shall be protected even at the expense of the innocent suitor, and a case where the defeated litigant is insisting that he also should be protected, to the detriment of the innocent party, upon whose property he has thrown the burden of the expense of a receivership. We do not believe that any case can be found to uphold the palpably unjust rule that one who is shown to have had no right to maintain the action, and no interest whatever in the property which he claims, can require that the defendant, who has paid out of his own pocket the expenses of a receivership, shall not call upon him (the plaintiff in the action) for reimburse-ment. The case of *City of St. Louis* v. *St. Louis Gaslight Co.*, 11 Mo. App. 237, is directly in point in support of our view of the law. See, also, as tending to support it, *Lockhart* v. *Gee*, 3 Tenn. Ch. 332; *French* v. *Gifford*, 31 Iowa, 428. The best reasoned

case we have found on the subject is *Cattle Co.* v. *Bindle*, (Tex. Civ. App.) 32 S. W. Rep. 582, where the court clearly distinguishes between those cases where the right of the receiver himself is involved, and those in which the sole inquiry is how, on equitable principles, the expenses of the receivership should be adjusted as between the parties to the action. The court, after adopting the rule that in the first instance the receiver should ordinarily be allowed his fees and expenses out of the fund, declares: "In fact, we are of opinion that costs of this kind, in the absence of a statute, should in all cases, as between the parties, be adjudged upon equitable principles. *French* v. *Gifford*, 31 Iowa, 428. In this case, however, the question is not whether the court, after authorizing the receiver to retain his compensation out of the funds, should have gone further, and authorized the defendant [appellant] to recover the sum so retained from the plaintiff; but the question is should the receiver have been authorized to retain his fees out of the fund in the first instance?"

We regard the cases cited by counsel for plaintiffs as distinguishable from the case at bar. This is readily discernible from an examination of their facts, and the grounds on which such decisions were respectively based. See *Radford* v. *Folsom*, 55 Iowa, 265, 7 N. W. Rep. 604; *Jaffray* v. *Raab*, 72 Iowa, 335, 33 N. W. Rep. 337; *Hembree* v. *Dawson*, (Or.) 23 Pac. Rep. 264. In *Heise* v. *Starr*, 44 Ill. App. 406, the court merely held that the receiver could look to the fund for his pay, without reference to the question of the ownership thereof, as between the parties to the suit. What would be the respective rights of the parties as between themselves was expressly left undecided, it not being involved. Were there no other facts in this case, the District Court would have been justified in rendering judgment against the plaintiffs for the full amount of the receiver's fees and expenses which had been taken out of the property on which the defendants held liens. Is there anything peculiar in the circumstances of the case which take it out of the general rule? We must answer this inquiry in the negative. The original order

appointing the receiver directed him to proceed with all reasonable dispatch to convert the property into money. This order was made October 25, 1889. Thereafter the receiver applied to the court for authority to make purchases of goods, that the stock might be kept up so that sales could be made to advantage. The receiver appears to have considered that he was to sell out the property gradually at retail, and it is apparent that the plaintiffs acquiesced in this view for some time. No steps were taken by them to compel the disposition of the goods, but the matter appears to have been left to the discretion of the receiver, supplemented by such directions as the court should from time to time give him in the execution of the trust. In June, 1890, plaintiffs' counsel recognized the fact that the receiver had been carrying on the business in this way, and they did not at that time raise any objection thereto. It is true, they presented to the court an affidavit, and asked for an order that the receiver be required to account; but they did not question the legality of his course, but, on the contrary, tacitly admitted it, by the averments of the affidavit then presented, and the character of · the relief they sought. They did not ask that the receiver be required to desist from further pursuing this policy. They did not even assail the legality of what he had done. They merely insisted that he should be required to account from time to time while the business was being so conducted. The affidavit to which we refer was made by one of plaintiff's counsel, and is. so far as its provisions relate to this question, as follows: "That said receiver has been in possession thereof since his appointment, and has been buying and selling therefrom in the course of trade, and making additions thereto by purchase, from time to time, as deemed best; that he has conducted a large buisness therein, but has never rendered an account to this court of any of his receipts or transactions as such receiver, or of any disposition made of any of the assets which came into his hands in that capacity; that it will be for the best interest of all parties to said action to have said receiver report to this court at once, and as often as once in each

month hereafter, all his transactions as such receiver." The order to show cause, which the plaintiffs obtained, did not require the receiver to show cause why he should not discontinue this mode of managing the estate, but merely that he be required to render monthly accounts; thereby indicating that plaintiffs not only recognized what had been done in the past, but desired that the same policy might be pursued in the future. That order to show cause is as follows: "It is ordered that you, J. C. Gill, the duly appointed receiver of the property and assets of J. R. Pollock, defendant above named, report to this court on or before the 12th day of June, 1890, and show the items and amount of all expenses incurred by you as such receiver in the conduct of the business of such receivership, the amount of all sales of merchandise or other property, the items and amounts of all collections, the amount of all purchases or additions made to said stock, by order of court or otherwise, in your capacity as such receiver, and the value of all cash, stock, and other assets now in your hands as such receiver, and that hereafter you report on the 1st day of each month during the pendency of your said receivership the amount of all sales and purchases, all expenses incurred by you as such receiver, the amount of cash and the estimated value of all stock in your possession as such receiver, during the pendency of such receivership." These facts make it evident that plaintiffs were willing to have the business continue, with all the consequences thereof. They therefore assented to the incurring of all the necessary expenses of the management of the business, including the reasonable compensation of the receiver himself. It follows that they cannot urge that the defendants alone are responsible for such expenses, and hence should pay them. The defendants merely held liens upon the property, and, if the value of the property at the end of the time when the receiver ceased to carry on the business was as much greater than its value at the time he took possession as the expenses of the receivership, it would be obvious that defendants had not suffered any injury by charging up such expenses against the fund. But the facts do

not present such a case. There is no showing that the stock was increased in value by the business which was carried on. It was fairly worth $12,000 when the receiver took possession. And all the receiver ultimately realized therefrom was the sum of $8,172.63, of which $3,088.58 was turned over to the defendants at the end of the litigation, and the balance, $5,084.05, was retained by the receiver for his fees and expenses. It would thus seem that the business had been carried on at a loss. Had there been no receivership, the defendants would certainly have realized their claims out of the property, as such claims did not exceed $6,300, and they were, at the time the receiver took possession, proceeding with the foreclosure of their mortgages. But, after adding to all that was turned over to them by the receiver that proportion of the amount of the expenses of the receivership for which they have been allowed judgment against the plaintiffs, there is still a deficiency on their claims. The money which has been used to pay the expenses of the receivership has directly lessened the sum which they would otherwise have obtained out of their security. In other words, their security has been taken from them, to their prejudice, to discharge the expenses of a receivership for which they are not, but for which the plaintiffs are, responsible,—a receivership which they opposed, and which has been finally adjudged to have been improper. They should therefore be allowed a judgment against the plaintiffs to the full extent that the payment of such expenses out of their security has operated to their detriment, were it not that they themselves appear to have acquiesced in the course pursued by the receiver. This fact affords some reason for apportioning such expenses between the parties, and this was what was done, the plaintiffs being required to pay only three-fifths thereof. We should have been satisfied, however, had the court required the plaintiffs to pay all these expenses. Even then the defendants would fail to to collect their claims,—claims which were amply secured at the time the property was wrested from them by the receivership.

But the defendants appear to be satisfied with the judgment, as they have not appealed.

We are unable to agree with counsel for plaintiffs that the fact that it had been decided by the Territorial Supreme Court (*Straw* v. *Jenks*, 6 Dak. 414, 43 N. W. Rep. 941,) that the action in which the receiver was appointed would lie is at all important. This court held that that decision was not the law, and it is not true that it ever was the law in the State of North Dakota. It was the law when this action was commenced that the plaintiffs had not a particle of interest in the property which they sought to have declared a trust fund for the benefit of all their debtor's creditors otherwise we should have decided the case in their favor. The ground of our decision was that, while there was a decision favorable to the maintenance of the action, yet that decision did not correctly declare the law on that subject. The plaintiffs, without shadow of right, under the law, to any of the property on which defendants held liens, had the same taken from the defendants' possession and put in the custody of a receiver; and the result has been that the defendants have had their security largely decreased in value by the receiver's charges, which have been paid out of the proceeds of such property. While the plaintiffs may have been misled by the erroneous decisions of the Territorial Supreme Court, that is no reason why the defendants, who are equally innocent, and who did not secure, but opposed, the appointment of the receiver, should suffer all the loss resulting from such error. We do not mean that counsel for plaintiffs are in fault. They are not. They relied on a decision directly in point, the same as any other member of the bar might have done under similar circumstances. It was entirely natural that they should take the course which they did, and we cannot but feel that the result is a hardship for the plaintiffs, under the circumstances. But the hardship to the defendants, would be still greater, were we to compel them to bear all this loss. We are not prepared to say that it is not unjust to require them to pay any portion of the receiver's charges. But their

acquiescene in the judgment, which gives them relief to only the extent of three-fiths of the expenses of the receivership, renders it unnecessary for us to express any opinion on this point.

The judgment of the District Court is affirmed. All concur.