P. C. FRICK, Administrator of the Estate of J. S. COOK, Deceased, Appellant, v. M. L. FRITZ, Defendant, and MORRIS & CUTHBERT, Interveners.

**Receivers:** COSTS. Ordinarily the expenses of a receivership are 1 to be satisfied from the property or funds coming into the hands of the receiver, but where the right to subject the property for which the receiver is appointed to the payment of his claim is contested, and it is finally determined that his right to the same is inferior to that of an intervening mortgagee, the costs should not be paid from such property, to the detriment of the mortgagee, but should be taxed to the party invoking the receivership.

**Consent to sale:** WAIVER OF LIEN: COSTS. Where a prior mortgagee 2 is not a party to a proceeding, for the appointment of a receiver, but intervenes simply to assert his right under the mortgage to property in the hands of the receiver, his consent to a sale, reserving the mortgage lien upon the proceeds, is not an assent to the receivership depriving him of a right to possession of the fund, and where it does not appear that such mortgagee derived a benefit from the receivership, he should not be required to contribute to the costs.

**Costs.** The question of costs is incidental to the judgment in the 3 action, and on reversal the court is authorized to make a further order as to payment thereof, though inconsistent with the former.

*Appeal from Cedar Rapids Superior Court.*—HON. JAMES
H. ROTHROCK, Judge.

WEDNESDAY, JULY 13, 1904.

THIS was originally an action aided by attachment to
recover judgment on certain notes made payable at Cedar
Rapids. The writ of attachment was levied on certain prop-
erty of the defendant, consisting of cattle, corn, and hay, in
Palo Alto county. Subsequently, by amendment, plaintiff
asked the appointment of a receiver to take charge of the
attached property. Such receiver was appointed, and on
his application the cattle were ordered to be removed to
Cedar Rapids, and were so removed by him. Thereupon
the interveners filed their petition in the case, alleging that
they were the holders of chattel mortgages on the cattle ante-
dating the attachment, and asking that the liens of their
said mortgages be declared to be superior to plaintiff's claim
under his attachment. It was then stipulated between plain-
tiff and interveners that the cattle might be sold by the
receiver, and that the rights of the plaintiff and interveners
to the proceeds from such sales should remain the same as
their rights in and to the cattle then in possession of the
receiver, and should be determined as though the cattle them-
selves were in the hands of the receiver at the time the rights
of the respective parties should be tried and determined.
Judgment was eventually rendered in favor of plaintiff
against defendant Fritz in the main action, and in the inter-
vention proceeding it was held that the attachment lien was
superior and paramount to the claims of interveners under
their mortgages, and on the final report of the receiver he
was allowed to retain out of the funds coming into his hands
from the sale of the attached property $646.49 for costs and
fees of his receivership, and to pay over the balance of the
proceeds to the clerk, to be applied on plaintiff's judgment
and costs. On appeal to this court the judgment of the lower

court, giving priority to plaintiff's attachment over interveners' mortgages, was reversed. *Frick v. Fritz,* 115 Iowa, 438. Thereupon a motion was filed by the plaintiff, asking the court to determine what costs in the action were taxable to plaintiff and to interveners, respectively, and what amount of the proceeds of the attached property received by plaintiff from the clerk on his judgment should be by him returned into court. In ruling on this motion the court decided that the amount received by plaintiff on his judgment should be returned, and that the expenses of the receiver, allowed by the court in the sum of $646.49, should be borne by the plaintiff, and, as the sum had been paid out of the proceeds of the sale of the attached cattle, the plaintiff should pay the amount thereof into court for the use of the interveners. From the order of the court directing plaintiff to pay into court the sum allowed for the expenses of the receiver the plaintiff appeals.— *Affirmed.*

*Crissman & Sargent,* for appellant.

*Dawley, Hubbard & Wheeler,* for appellee.

McCLAIN, J.— The concrete question to be determined on this appeal is whether, when a receiver has been appointed for attached property, the expenses of the receivership shall be deducted from the proceeds of the property, as against an intervener who has established a right to the property as mortgagee prior and superior to that of the plaintiff under his attachment, it appearing that the proceeds of the attached property are not sufficient to satisfy the intervener's mortgage, or whether, on the other hand, the proceeds of the property shall be turned over to the intervener under his claim as mortgagee, and the costs of the receivership shall be taxed to the plaintiff, who has been unsuccessful in the attempted assertion of his right to the property by attachment.

It has frequently been said, in the discussion of questions as to the taxation of the costs of a receivership, that

the authorities are in serious conflict. But it will be discovered, on examination, that the rules applicable to such cases are reasonably well settled, and without substantial conflict, although, perhaps, there has been some diversity of views as to the applicability of these rules under particular states of fact. The general rule is well established that the expenses of the receivership are to be satisfied out of the property or funds coming into the hands of the receiver, and this rule is so universally accepted as the starting point for all discussion that authorities supporting it need not be cited. Where the object of the receivership is to preserve the property pending a determination of the rights of the parties to the litigation with reference to such property or the proceeds thereof, there is no question but that the successful party, availing himself of the fruits of the litigation, must take subject to the burden of the costs of the receivership, and it is immaterial whether the plaintiff has succeeded in asserting the rights in aid of which the receivership has been asked, or whether the defendant has established the invalidity of plaintiff's claims. *Hirsch v. Israel,* 106 Iowa, 498; *Hembree v. Dawson,* 18 Or. 474 (23 Pac. Rep. 264); *Beckwith v. Carroll,* 56 Ala. 12; *Simmons v. Allison,* 119 N. C. 556 (26 S. E. Rep. 171); *Espuella Land, etc., Co. v. Biddle,* 11 Tex. Civ. App. 262 (32 S. W. Rep. 582). And this rule is properly applied where the contest is not as to the regularity or legality of the proceedings for the appointment of the receiver, but only as to the disposition of the proceeds of the property or funds. *Jaffray v. Raab,* 72 Iowa, 335; *Radford v. Folsom,* 55 Iowa, 276; *Harrington v. Foley,* 108 Iowa, 287; *Gallagher v. Gingrich,* 105 Iowa, 237; *St. Paul Title, etc., Co. v. Diagonal Coal Co.,* 95 Iowa, 551; *Cutter v. Pollock,* 7 N. D. 631 (76 N. W. Rep. 235).

But where the right of the plaintiff to subject the property for which he seeks to have a receiver appointed to the payment of his claim is resisted from the beginning, and the effect of the appointment of a receiver is to subject to the

*1. RECEIVERS: costs.*

control of such receiver property in which the plaintiff is, as the result of the litigation, found to have had no interest or right whatever, it would evidently be unjust that, after determination of the case against the plaintiff, he should be allowed to have the expenses of the receivership, which he has occasioned by his unfounded claim, and from which the opposite party derives no benefit, satisfied out of the property itself. Such a result would be inequitable, for it would throw upon defendant the burden of a litigation instituted by plaintiff without right. This court so held in the case of *French v. Gifford,* 31 Iowa, 428, in which, after reversal of an order for the appointment of a receiver on the ground that such order was improperly made, it was decided that the expenses of the receivership should not be taken out of the property coming into the hands of the receiver, but should be taxed to the plaintiff. The rule to be followed in such a case is thus stated by the court: " It is insisted by plaintiff's counsel that the compensation of the receiver should be paid out of the fund of which he had the custody and charge, and that he should be permitted to retain the same therefrom. Numerous cases have been cited to show that such is the uniform practice. Upon an examination of these cases it will be found that in every case there was no question made as to the legality or propriety of the appointment of the receiver; that in each case the receiver closed up the business, and settled his accounts in pursuance of his appointment. The receivership in each case was for the benefit of those interested in the fund, and he was paid therefrom, which is only another method of apportioning the costs upon those entitled to the fund. * * * We think it would be an unjust and inequitable rule if in all cases the receiver should be entitled to his compensation from the fund in his hands, without reference to the legality of his appointment. Under the operation of such a rule innocent persons might be made to suffer great loss." This case has been cited in all the text-books on receiverships and in many of the cases

on the subject decided in other States, and, so far as we have observed, always with approval. And it seems to be a well-established rule that property which should not have been brought within the jurisdiction of or taken possession of by a receiver should not be appropriated to the payment of the expenses of the receivership. .In such cases the receiver must look for his compensation to the portion of the fund which was properly brought within his jurisdiction, or, if there is no such fund, then to the plaintiff on whose application the receivership was secured. *Ephraim v. Pacific Bank,* 129 Cal. 589 (62 Pac. Rep. 177); *Tome v. King,* 64 Md. 166 (21 Atl. Rep. 279); *Knickerbocker v. McKindley Coal, etc., Co.,* 67 Ill. App. 291; *Highley v. Deane,* 168 Ill. 266 (48 N. E. Rep. 50); *Ferguson v. Dent,* 46 Fed. 88; *St. Louis v. St. Louis Gas Light Co.,* 11 Mo. App. 237; *Weston v. Watts,* 45 Hun, 219; *Welch v. Renshaw* (Colo. App.) 59 Pac. Rep. 967.

A pertinent case is that of *Howe v. Jones,* 66 Iowa, 156. In that case a receiver had been appointed on plaintiff's application, and directed to take charge of certain property, on the representation that it belonged to plaintiff's debtor, and was subject to be appropriated to the satisfaction of plaintiff's judgment against him. But on an intervention in behalf of a claimant to the property it was determined that it did not belong to the debtor, and that no portion of it could be appropriated to the payment of plaintiff's claim, and in reversing an order of the lower court authorizing the receiver to retain out of the proceeds of such property a sufficient sum to compensate him for his services and reimburse him for costs and expenses incurred while discharging the duties of receiver under the appointment the court says: " This provision of the order works a great injustice, and is manifestly wrong. It compels the interveners to pay the cost and expense occasioned by the attempt of the plaintiffs to have their property applied to the satisfaction of the debts " of plaintiffs' debtor. And the court proceeds at some length,

in language which is very applicable to the case before us, but which we need not quote, to say that the possession of the property by the receiver was from the beginning a violation of interveners' rights; and that while the receiver may perhaps be entitled to compensation for services and reimbursement for expenses, he must look for such compensation and reimbursement to the party at whose instance he was appointed; and that while it might be true that, if the costs and disbursements were beneficial to the parties ultimately entitled to the fund, they might be taken out of the fund as against an original party to the proceeding in which the receiver was appointed, they could not thus be satisfied as against an intervener asserting and establishing his right to the property in hostility to the entire receivership proceeding.

It is to be noticed that in the case before us, as in the case last cited, the interveners were not parties to the original proceeding, and came into it only to assert a hostile

2. CONSENT TO SALE: waiver of lien; costs.

claim to the property under chattel mortgages, which, as was decided on the former appeal, were prior and superior to plaintiff's attachment. They did not acquiesce in the receivership, and seek to recover the funds realized by the receiver from the attached property, but proceeded under a stipulation that their rights should be adjudicated as though the property were still in the hands of the receiver and they were asserting their right to possession thereof as against the attachment levy. It is argued that as interveners had only a mortgage lien upon the cattle, any surplus was subject to the attachment, and therefore interveners were properly in court only for the purpose of having their mortgages paid out of the proceeds of the property. But the interveners were not compelled to come into the receivership proceeding, and have their rights determined in that manner. Under their mortgages they were entitled to the possession of the property itself, and to have it subjected by such proceedings as they might see fit

to institute to the payment of their claims, without the expense of a receivership. Had plaintiff desired to attach the surplus after the satisfaction of interveners' mortgages, he might have done so in accordance with the statutory provisions, by paying or tendering to interveners the amount of the indebtedness secured by their mortgages. Plaintiff saw fit, however, to disregard interveners' claims, and, however meritorious may have been his contention that his attachment levy gave him a priority over interveners' mortgage liens, that question has been decided against him, and he must abide by the consequences of the litigation.

We find no merit in the contention for plaintiff that interveners have been benefited by the receivership, and should bear the expense thereof. The cost of keeping the cattle was not a charge as against the interveners, but was to be borne by the mortgagor. If the interveners should have concluded that their security was impaired by failure of the mortgagor to properly care for the cattle, or for any reason, they had the right to take possession and sell under their mortgages, as they should see fit. We discover nothing in the record to indicate that they have at any stage of the proceeding acquiesced in the receivership, or voluntarily availed themselves of the benefits thereof. Had it been made to appear that in making claim to the proceeds of the property realized by means of the receivership they had availed themselves of any benefits resulting from such receivership, they might, no doubt, have been properly required to submit to an equitable apportionment of the costs in accordance with the benefits received. *Espuella Land, etc., Co. v. Biddle,* 11 Tex. Civ. App. 262 (32 S. W. Rep. 582); *Highley v. Deane,* 168 Ill. 266 (48 N. E. Rep. 50); *Cutter v. Pollock,* 7 N. D. 631 (76 N. W. Rep. 235). But no showing for an equitable apportionment of costs is made, and under the record we think that no such showing could be made.

It is contended for appellant that the order of the lower court taxing the costs of the receivership to plaintiff in effect

sets aside and vacates the prior order of the same court, made
on the approval of the receiver's final report, by

**3. Costs.**

which he was directed to retain the expenses of
the receivership out of the funds in his hands.    But that or-
der was incidental only to the judgment that interveners'
mortgages were invalid as against plaintiff's attachment.
The reversal of that finding made it necessary for the trial
court, in the final disposition of the case, to make a further
order as to the payment of the costs of the receivership, and
we reach the conclusion that the order finally made was
correct.

The judgment of the lower court is AFFIRMED.