# SUPREME COURT

OF THE

## STATE OF COLORADO.

---

## January Term, 1903.

---

[No. 3768.]

THE LA JUNTA AND LAMAR CANAL COMPANY ET AL. V.
HESS ET AL.

[No. 3769.]

THE LA JUNTA AND LAMAR CANAL COMPANY ET AL. V.
THE GREAT PLAINS WATER STORAGE COMPANY.

[No. 3996.]

THE LA JUNTA AND LAMAR CANAL COMPANY ET AL. V.
HESS ET AL.

AND

THE LA JUNTA AND LAMAR CANAL COMPANY ET AL. V.
THE FORT LYON CANAL COMPANY.

1. Water Rights—Equity Jurisdiction—Receivers.

In an action by water rights owners against a canal company
to enforce specific performance of a contract between the canal
company and plaintiffs whereby on the happening of certain con-

tingencies the title to the canal and appurtenances should pass to said water rights owners and vest in a new corporation for their benefit, where a receiver was appointed to take possession of the property and manage it pending the litigation, and a decree was entered directing the formation of a new company and that the canal and other property of the old company be transferred to the new for the benefit of said water rights owners subject to the payment of the debts created by the receiver in his management of the property pending litigation, the court retaining jurisdiction for the purpose of enforcing payment of such indebtedness, and the new company formed having failed to pay said indebtedness, the court had authority in the pending action to direct the receiver to again take possession of the property without a suit having been brought against the new company; to direct the receiver to pay off said indebtedness and for that purpose to issue a receiver's certificate secured by mortgage of the property; also to direct the receiver to enter into a contract with a water storage company whereby said storage company was permitted to utilize the canal and an uncompleted reservoir for the purpose of conducting and conserving water for storage purposes, in consideration that the storage company should repair the canal before the opening of the next irrigating season. Neither the old nor new company was in position to object to the order directing the mortgage to secure the receiver's indebtedness or to the contract with the storage company since the decree of the court had divested the old company of all interest it had in the property and the new company was but a naked trustee in whom the property was vested for the benefit of the water rights owners, and neither could be injured by said orders.

2.  Water Rights—Equity Jurisdiction—Trusts and Trustees.

. Where water rights owners brought an action against a canal company to enforce specific performance of a contract whereby upon certain contingencies the canal and appurtenances was to vest in said water rights owners, and procured a decree directing that a new company be formed and that the property be transferred to said new company for the benefit of said water rights owners, and said new company after coming into possession of the property failed and refused to comply with the directions of the decree of the court, and managed and controlled the property not in the interest of the water rights owners but in a manner inimical to their interest, the court had authority upon petition of said water rights owners to divest said new company of its title and possession to said property and vest it in another company organized by said water rights owners for that purpose.

*Error to the District Court of Prowers County.*

Mr. CHAS. J. HUGHES, Jr., Mr. TYSON S. DINES and Mr. A. MOORE BERRY, for plaintiffs in error.

Mr. CHAS. E. GAST and Messrs. ROGERS & SHAFROTH, for defendants in error.

Mr. JUSTICE GABBERT delivered the opinion of the court.

The several questions which plaintiffs in error seek to have determined in the first two causes grow out of the action of the lower court had in the Hess case, after the original and amended decrees were rendered in that action. They were docketed separately, but have been consolidated in this court. According to the title of the third cause, it appears there are two, when, in fact, there is but one, which is the Hess case, and is the same cause as the first, in which proceedings were had on the petition of The Fort Lyon Canal Company, of which plaintiffs in error complain. The several causes are so intimately associated, and as the questions presented for consideration in the second and third causes grow out of the first, and relate to the successive steps taken by defendants in error towards obtaining the ultimate relief to which the plaintiffs in the Hess case claim to be entitled, they can best be disposed of in one opinion. For convenience The La Junta and Lamar Canal Company will be designated the "old company;" The New La Junta and Lamar Canal Company as the "new company," and the Fort Lyon Canal Company as the "Fort Lyon company."

The main matters of which plaintiffs in error complain in the first two cases are the action of the court in directing the receiver to take possession of the property in controversy, entering orders with re-

spect to the payment and securing of the indebtedness incurred by him, and in authorizing the receiver to enter into a contract with the storage company; and in the third cause, turning the possession of such property over to the Fort Lyon company. For a proper understanding of the questions involved it will be necessary to give a history of the litigation which resulted in the several orders of the trial court of which the plaintiffs in error complain.

The corporation known as The Arkansas River Land, Reservoir and Canal Company and the old company were successively the owners of a canal and irrigation system. The Hess case, which was commenced on behalf of himself and others similarly situated, was instituted against the old company, to compel a specific performance of the contract contained in the water deeds evidencing the water rights owned by them in the canal and appurtenances belonging to that company. This contract provided, in substance, that on the happening of certain contingencies, the title to the canal and appurtenances should pass to the owners of such water rights and vest in a new corporation for their benefit. The water right owners were to be the owners of the stock in this corporation, distributed among them in the proportion that such water rights bore to the whole number. The judgment in this action was in favor of the plaintiffs, and a decree was entered directing the old company to execute and deliver a deed of conveyance to its canals, reservoirs and other property rights held in connection therewith to such new corporation as the owners of water rights in the poperty so conveyed might organize for the purpose of operating and managing it. Prior to this judgment, the court had appointed a receiver to take charge of and manage the property pending the litigation. From this judgment the company appealed to the court of appeals, where it was

affirmed, except with respect to the organization of the new company. On this subject the court of appeals directed that the method provided in the contract contained in the water deeds for the creation of a new corporation to own and control the property for the benefit of the water right owners should be followed, and remanded the cause for further proceedings in conformity with that order. Pursuant to this judgment, the trial court entered an amended decree, directing the formation of a new company in the manner provided in the contract contained in the water deeds. The old company accepted this decree, and the new company was at once organized. Upon the organization of this company, the property was turned over to it, subject to the unpaid indebtedness created by the receiver in the management of the property during the litigation above referred to, the court, however, retaining jurisdiction for the purpose of enforcing the payment of such indebtedness. The new company having failed to discharge the debts incurred by the receiver, petitions were presented by the holders of receiver's certificates evidencing such debts, the purpose of which was to obtain an order which would enable such holders to collect their claims. The new company resisted this petition, but the court directed that it should assume and pay the receiver's certificates. This order not having been complied with, the original plaintiff, John Hess, presented his petition, the object of which was to procure an order authorizing the receiver, in conjunction with the new company, to borrow money to discharge the receiver's indebtedness, the money so borrowed to be secured by a mortgage executed by the receiver and the new company, which should be a first lien upon all the property of the company. It appears that due notice of this application was given both companies and the receiver. An order was entered

in accordance with the petition. The new company refused to comply with this order and Hess then presented an application for an order directing the receiver, independent of the new company, to carry out the decree of the court with respect to borrowing the money and discharging the receiver's indebtedness. This application was resisted by the new company, which appeared for that purpose. A decree was rendered, directing the receiver to again take possession of the property, who at once did so. It was also ordered that further hearing on the question of the receiver discharging the previous indebtedness incurred by him should be continued to a day certain, at which time the parties, including the new company, appeared, when an order was entered directing the receiver to execute a certificate for the amount of the indebtedness due, together with a mortgage securing it upon the property. Thereafter the storage company filed its petition, praying that it be permitted to enter into a contract with the receiver authorizing it to utilize the main canal of the property in controversy, and an uncompleted reservoir for the purpose of conducting and conserving water for storage. It is not necessary to notice the averments of this peti-. tion in detail, or to state with particularity the terms of the proposed contract, because the main contention of plaintiffs in error is, that the court had no authority in any circumstances to direct the execution of the contemplated contract. The petition, however, recites that the consent of more than sixty per cent of all water right owners, and about ninety per cent of the actual users of water through the system to such contract had been secured, and the advantages which would accrue to them under this contract. This petition was served upon all the parties to the action, together with notice of the time and place of hearing thereon. To the petition the old company answered,

and the new company demurred.   The court directed the receiver to enter into a contract with the storage company upon practically the terms and conditions mentioned in the petition and the proposed contract attached thereto.

On the hearing of these several matters it appears substantially from the testimony introduced that the new company had taken no steps to take care of the receiver's indebtedness; in fact, this may be inferred from the position which it assumed in resisting the applications made by interested parties for this purpose.   The application of the storage company and the hearing thereon was had in the winter.   The canal at this time was in need of repair, but the new company, although it had been in possession of the property for several months, had taken no steps in this direction.   The water right owners were not in a financial condition to bear the expense of making these repairs themselves, nor did the new company have any funds to meet such expenses.   The contract with the storage company provided that the latter, in consideration of the privileges granted, should repair the canal before the opening of the next irrigating season.   It also appeared the new company would make no objection to this contract or the management of the property provided certain indebtedness incurred by the old company, secured by mortgage on the property, was discharged.   After the foregoing matters had been disposed of, and something over a year after the date the new company had been placed in possession of the property, the water right owners held a meeting and directed certain of their number to organize a company the object of which was to take possession of the property and manage it in the interest of those who, according to the contract contained in their several deeds, and the decree of the court thereon, were its real owners.   This action

resulted in the organization of the Fort Lyon company. On its behalf a petition was filed in the original Hess case by parties interested, wherein was stated the object for which the company had been organized; that the new company was not managing the property in the interest of the water right owners; that its management was inimical to this interest, and set forth with particularity the acts of the new company upon which petitioners relied to establish this condition of affairs; and prayed that the order of the court, directing the delivery of the possession of the property to the new company be vacated, and the system turned over to the Fort Lyon company. The old and new companies received notice of this petition, and having answered, the court, upon trial of the issues, granted the prayer of the petition, and directed the receiver to deliver the property to the Fort Lyon company. On the trial of this matter it appears from the testimony that some of the directors of the new company insisted that, before the water right owners should fully enjoy the use of the property of which the court had decreed them to be the owners, the unsatisfied indebtedness of the old company should be discharged, or at least, arrangements made for its payment satisfactory to the holders of the evidences of such indebtedness. The validity of this indebtedness was denied by the water right owners. It further appears that The King Water Storage Company had been organized by persons opposed to their interests, and the new company had undertaken to enter into a contract granting it the right of way for the conveyance of water for storage purposes, and that both the old and new companies had undertaken to execute a contract to The King Storage Company, whereby it was intended to vest in it all interests in what was known as the King Reservoir. The water right owners in the main system claimed that this

reservoir was a part of that system.   The new company refused to recognize this claim.   It also appears that the new company had issued no stock to the water right owners, nor made any distribution of its stock whatever, except the issuance of one share each, to the directors, and the remainder to a trustee.   This is not regarded of any particular moment in view of the fact that the lower court had apparently directed that the parties entitled to the stock should first be ascertained.

On behalf of the old and new companies, plaintiffs in error here, it is contended that the court erred in the first two causes in directing the receiver to execute certificates of indebtedness, and to join with the new company in executing a mortgage to secure such indebtedness; in subsequently directing the receiver to execute such mortgage; in authorizing the receiver to again take possession of the property to the exclusion of the new company; in directing the receiver to enter into a contract with the storage company; and that the action of the court invalidated the indebtedness of the old company secured by mortgage upon the property and took from the new company property in which the water right owners had no interest.

The main proposition advanced in support of the claim that the above action of the court was erroneous, is, that the court was without authority to make the several orders objected to in so far as the new company was concerned, because no action was pending against it, or to which it was a party; that in none of these proceedings application was made for the appointment of a receiver for the new company; that the court's authority over the property had terminated when it made an order executing the mandate of the court of appeals; and that the original appointment of the receiver only contemplated his

control and management of the property pending litigation in the Hess case.

The purpose of the Hess suit was to enforce the specific performance of a contract entered into between the old company and its predecessor, whereby it was provided that on the happening of certain contingencies the property in controversy should vest in the water right owners. The result of that action was a decree in favor of such water right owners, whereby it was determined that they were, in fact, the real owners of the property, and entitled to its management and control. The provision of the decree relative to the formation of a corporation in which such property should vest for the benefit of the water right owners was set aside by the court of appeals. When the cause was remanded to the district court, the decree with respect to the organization of a corporation to operate the property for the benefit of the owners was amended. The old company accepted the situation and acquiesced in the judgment of the court, that the property, in fact, belonged to the water right owners. The officers of that corporation organized the new company, which was given possession of the property under and by virtue of the terms of the decree which called for its organization. When it assumed such possession (which it did at the instance of the old company) it thereby became the instrument of the court through which the plaintiffs in the Hess case were to obtain and enjoy the rights which they had been decreed. The power of the court over the subject-matter of controversy was not exhausted until the objects of the suit had been attained. For this purpose the property was still in the custody of the court and the new company subject to its orders; so that when it refused to assume or discharge the receiver's indebtedness, or take the proper and necessary steps looking towards utilization of the property

for the benefit of the water right owners, it was within the power and authority of the court to direct these acts to be performed. It was not necessary to bring an action against the new company for the appointment of a receiver, because it was already before the court in the original action, and subject to its control by virtue of the very terms of the decree under which the possession of the property had been turned over to it, as the representative of the plaintiffs in the cause in which that decree was rendered. The receiver's indebtedness had to be cared for, and the court had the inherent power to place itself in a position which would enable it to make and enforce orders with respect to such indebtedness.—*Knickerbocker et al. v. McKimbly, C. & M. Co.,* 50 N. E. 330. Until the terms and conditions of the decree were complied with, and the water right owners for whose benefit the new company was organized had obtained that to which the decree entitled them, the court had jurisdiction of the cause, the parties to the action, and its agents through which relief was to be administered for the beneficiaries in the Hess case until the object of the action had been accomplished. This being true, plaintiffs in error cannot question the action of the court in authorizing the receiver to take possession of the property and provide for the payment of the indebtedness incurred by him in the management and control of the property pending litigation, nor can they question the authority of the court to direct the receiver to enter into the contract with the storage company. It appears that this contract was consented to by a majority of the water right owners. The character of the property was such, and the needs of the real owners of a nature, which required that the property be kept in a condition so that it could be utilized in the irrigation of lands cultivated by such owners. The new company had taken

no steps in this direction, and as the property was at all times after the new company took possession still under the control of the court, it had the right to direct its agents to do those acts which would preserve and render it useful to its owners. The plaintiffs in error are not in a position to raise the question of whether or not the action of the court with respect to the receiver's indebtedness invalidated or affected obligations of the old company secured by mortgage upon the property. The old company was not required to assume any liability on this account. The new company was not primarily liable for this old indebtedness. It entered into no contract which would render it responsible, directly or indirectly, either for the indebtedness of the old company or that of the receiver. Consequently, neither of the plaintiffs in error were injuriously affected by the order of the court, directing the receiver to execute a mortgage.

The claim that the contract with the storage company, the mortgage by the receiver, and the possession which was given him took property from the new company in which the water right owners had no interest, seems to be based upon the judgment of the court of appeals, in *The La Junta and Lamar Canal Co. v. Hess,* 6 Colo. App. 497, heretofore referred to, where it is claimed by counsel for plaintiffs in error the court of appeals decreed that the King reservoir was no part of the irrigation system or property in controversy. The judgment of the court of appeals is not susceptible of any such construction. In the first place, that question was not before the court, and secondly, what was said with respect to the King reservoir not being considered a part of the system was solely in connection with the questions of the estimated capacity of the canal, and that for this purpose it could not be considered as a part of the system.

The errors assigned in the third cause of action

are too numerous to notice in detail. They go, generally, to the admissibility of testimony, insufficiency of the pleadings on the part of the defendant in error, the findings of fact made by the court, and the orders with respect to the receiver; but when summarized, simply go to the one question of the authority of the court to direct the property to be turned over to the Fort Lyon company. What we have already stated with regard to the power and authority of the court to enter orders and judgments having for their object the protection and enforcement of the rights of the water right owners, is applicable to the action of the court in directing the receiver to turn over the property to the Fort Lyon company, and it is unnecessary to repeat it.

The remaining questions are, was such action justified, and can plaintiffs in error complain? The Fort Lyon company was organized by the water right owners, the real parties in interest. It appears from the testimony that the management of the new company was at least favorable to the payment of an indebtedness which, it is claimed, was a lien upon the property, and which the water right owners repudiated. The new company was their trustee, and yet it asserted that the King reservoir did not belong to them. This was antagonistic to their interests. They had been decreed the owners of the property in controversy, and entitled to its management and control, and yet by the action of the new company they were practically as far removed from enjoying the property which they had been awarded, as before the Hess action was brought. They certainly had the right to have the property managed by those who would fully protect their interests, and when their trustee neglected or refused to do so, it was properly removed at their instance. The object of the action in which the several orders have been made of which plaintiffs in

error complain was to vest the property in controversy in the water right owners; the several steps taken were for the purpose of effecting this end; the several orders made have done so; the decree of the district court by which it is adjudged that the holders of water rights are the owners of the property, has not been challenged. This decree certainly divested the old company of all interest in the property. It cannot complain of any order or judgment with respect to the ownership and control of property in which it has no interest, and therefore cannot injuriously affect its rights. The new company was but a trustee for these water right owners, and was given possession and control of the property in the first instance by the court for their use and benefit. It took title to the property covered by the decree in the Hess case and nothing more. So far as any interest in the property was concerned, this new company had none, save that of a naked, legal trustee; so that no action of the court in divesting this company of its possession and title to the property could injuriously affect its interests, for it had none to be affected. The whole proceeding, from beginning to end, was equitable in its nature; the parties and subject-matter remained unchanged throughout, and the court had the power and authority to make all orders and enter all judgments which were necessary to carry into effect its original decree, and conserve the interests of those in whose behalf it had been rendered.—*Root v. Woolworth,* 150 U. S. 401. It has done so; no one having any interest which is affected by these orders or judgments is complaining, and they will, therefore, stand affirmed.

*Affirmed.*