JOHN J. KNICKERBOCKER *et al.*

*v.*

THE MCKINDLEY COAL AND MINING COMPANY *et al.*

*Opinion filed April 21, 1898.*

1. APPEALS AND ERRORS—*facts recited in decree presumed proven in the absence of certificate of evidence.*  Facts recited in a decree will be presumed, on appeal, to have been found upon sufficient evidence, in the absence of a bill of exceptions or certificate of evidence preserving the evidence heard by the trial court.

2. RECEIVERS—*property is chargeable with necessary expenses for preserving it.*  Where equity takes charge of property through a receiver, the property becomes chargeable with necessary expenses incurred in taking care of it, and the court may keep matters under its control until such expenses have been paid or secured.

3. SAME—*one acquiring property on final decree in receivership takes it cum onere.*  One who, under the final decree of the court, acquires property or the proceeds of property which has been under the control of the court through a receiver, takes the same *cum onere*, and chargeable with amounts due the receiver for services or advances for necessary expenses.

4. SAME—*court may make expenses of receivership a charge upon the property.*  Where the interests of all parties will be best preserved by having the receiver continue the business as a "going concern," the court may make the necessary running expenses a charge upon the property itself or the proceeds of the sale thereof, provided the income from the property is not sufficient to pay them.

5. SAME—*authority of a receiver to incur running expenses extends to cases other than railroads.*  The fact that the authority of a receiver to incur indebtedness to keep the business a "going concern" until the final adjustment of affairs is ordinarily exercised in railroad receiverships only, does not prevent the exercise of such authority in other cases when circumstances require it.

6. SAME—*effect of purchase, on foreclosure, by personal representatives of mortgagor.* The purchase of property, at foreclosure sale, by the personal representatives of the party who created the indebtedness which occasioned the receivership, amounts merely to a payment of the indebtedness, and does not free the property in their hands from necessary expenses of the receivership.

7. SAME—*when purchasers are estopped to question claims against receiver.* Parties purchasing hotel property and furniture at a foreclosure sale, who, after the purchase and pending an appeal from an order of court directing the receiver of the property to turn it over to them, consent to the receiver's retaining the property and keeping the business a "going concern," are estopped to deny the validity of claims against the receiver for coal and groceries furnished for that purpose.

*Knickerbocker* v. *McKindley Coal Co.* 67 Ill. App. 291, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook couuty; the Hon. JOHN BARTON PAYNE, Judge, presiding.

This is an appeal from a judgment of the Appellate Court, affirming a decree in chancery, entered by the Superior Court of Cook county, which decree is hereinafter set forth.

The appellees are intervening creditors, who filed an intervening petition on July 6, 1895, in a certain proceeding originally begun by one James J. Gore against Patrick H. Heffron to settle and adjust their partnership interests in certain property, part of which was Gore's Hotel in Chicago and the furniture therein. The petitioners, who are the appellees here, had furnished coal and groceries to the receiver, who was managing said hotel under an order of court. The petition alleges, that the receiver in charge of the hotel had refused to pay petitioners for the supplies so furnished by them. The prayer of the petition is, that the receiver may be required to sell and dispose of so much of the furniture and fixtures of the hotel, as may be necessary to realize sufficient money to pay them their claims. Answers were filed to the inter-

vening petition by the receiver and by the appellants, executors of the will of the deceased complainant in the original suit, and by Heffron the original defendant. Replications were filed to such answers. Upon the issue thus made the decree here appealed from was entered. That decree finds and adjudges as follows:

"That on January 9, 1889, James J. Gore and Patrick H. Heffron were partners, and as such owned and conducted a hotel known as 'Gore's European Fire-proof Hotel,' in the city of Chicago; that on said day said Gore filed the bill of complaint in this suit, against said Heffron, and therein prayed for an accounting and a dissolution of said partnership; that on January 29, 1889, upon agreement of the parties to said suit, an order was entered herein, appointing one James H. Rice receiver of the partnership property, and by said order said receiver was directed to operate said hotel and continue the said business; that thereupon said Rice qualified and entered upon the discharge of his duties as such receiver, and continued as such until on or about July 16, 1889, when he resigned, and thereupon, on motion of said Gore, one Nicholas D. Laughlin was appointed receiver of said partnership property, and by said order of appointment said Laughlin was directed to continue the conduct and operation of said hotel; that on or about October 22, 1891, the death of said Gore was suggested to the court, and thereupon an order was entered herein substituting John J. Knickerbocker, George G. Newbury and Ellis Hagenbuck, executors and trustees under the last will and testament of said Gore, as complainants in the cause; that upon the date of his appointment said Laughlin qualified and gave bond as such receiver, and entered upon his duties as such, and continued to conduct said hotel, as such receiver, from the date of his appointment until December 6, 1894, and continued to act as receiver herein until January 1, 1895, at which time he resigned, and thereupon an order was entered herein appointing one William M.

Tabor receiver in said suit; that said Tabor qualified and gave bond as such receiver, and entered upon the discharge of his duties, and continued to act as such receiver until February 20, 1895, when he departed this life, and thereupon an order was entered herein appointing one Walter W. Edsall receiver in said suit; that said Edsall qualified and gave bond as such receiver, and entered upon the discharge of his duties as such, and has since continued and now continues to act as such receiver.

"The court further finds that, prior to the filing of the bill of complaint in this suit, the said Gore and Heffron had become indebted, and in order to secure said indebtedness had executed a trust deed, which covered, among other property, the furniture and fixtures in said hotel; that thereafter suit was commenced to foreclose said trust deed, and thereafter a decree of foreclosure was entered in said suit, and thereunder, on March 15, 1894, said hotel building was sold to complainants for the sum of $95,000.00, and said furniture and fixtures were sold to complainants in this suit for the sum of $9250.00; that thereafter said sale was confirmed, and on March 28, 1894, an order was entered in this cause directing said receiver to turn said furniture and fixtures over to said complainants; that from the said order Heffron appealed to the Appellate Court of Illinois for the First District, where, on January 28, 1895, said order was affirmed; that, pending said appeal, said furniture and fixtures were left in the possession of said receiver, and by the consent of complainants and said defendants said receiver continued to operate and conduct said hotel; that in November, 1894, complainants, desiring to lease said hotel building to Messrs. Summerfield and Bedard, petitioned this court for an order directing the receiver to include said furniture and fixtures in said lease, and such order was entered and such lease was made to take effect from the 6th day of December, 1894, at which time the receiver ceased to operate said hotel; that on the 6th, 13th, 20th, 27th and

30th of November, 1894, and on the 3d of December, 1894, said receiver purchased and received from intervenor the McKindley Coal and Mining Company, coal for use and consumption in the conduct of said hotel to the amount of $737.83; that said coal was necessary to enable said receiver to conduct said hotel, and was so used by said receiver, and the purchase thereof was proper, and was authorized by and was in pursuance of the order appointing said receiver; that no part of said coal has been paid for, and that there is now due for said coal to said intervenor the McKindley Coal and Mining Company, from the said receiver, the sum of $737.83, with legal interest thereon after December 3, 1894; that on the 5th, 9th, 14th, 17th, 19th, 23d and 28th of November, 1894, and on December 3, 1894, said receiver purchased and received from intervenor the Steele-Wedeles Company, groceries to the amount of $212.38; that said groceries were necessary to enable said receiver to conduct said hotel, and were so used by said receiver, and the purchase thereof was proper, and was authorized by and was in pursuance of the order appointing said receiver and was in discharge of his duties as such; that no part of said groceries has been paid for, and there is now due to said intervenor the Steele-Wedeles Company for said groceries, from said receiver, the sum of $212.38, together with legal interest thereon from and after December 3, 1894.

"The court further finds that said sums so found due from said receiver to said intervenors became and were, and have since continued to be, a charge and lien upon said furniture and fixtures; that on July 3, 1895, the said Summerfield and Bedard surrendered their possession of said hotel and said furniture and fixtures, under the said lease, to the receiver, and thereupon said complainants John J. Knickerbocker, George G. Newbury and Ellis Hagenbuck took said furniture and fixtures out of the possession of the receiver, and have since said date continued to withhold said property from said receiver.

"The court further finds that the receiver has no funds or property with which to pay said claims of intervenors.

"The court further finds that on the 20th day of March, 1895, an order was entered in this suit referring the accounts of said Laughlin, as such receiver, from January 1, 1892, to January 1, 1895, to master in chancery James R. Mann, with directions to take the testimony and state said accounts, and report the same to the court; that on May 11, 1895, said master filed his report showing the accounts owing by and due to said receiver, among which are the accounts due to the intervenors herein and hereinbefore found.

"Wherefore it is ordered, adjudged and decreed, that the said John J. Knickerbocker, George G. Newbury and Ellis Hagenbuck, as executors and trustees of the last will and testament of James J. Gore, deceased, do, within ten days from the entry of this order, pay to said the McKindley Coal and Mining Company said sum of $737.83, with legal interest aforesaid, and to said Steele-Wedeles Company $212.38, with legal interest as aforesaid, and in default of so doing, restore to the possession of the receiver herein the furniture and fixtures which were in the hands of said Nicholas D. Laughlin as receiver herein on December 3, 1894, and which were by said complainants taken from the possession of the receiver herein on July 3, 1895; and that upon receiving said property the receiver herein shall forthwith proceed to sell so much of said property at public sale to the highest bidder for cash, first giving ten days' notice of the time and place thereof, as shall be sufficient to pay to the McKindley Coal and Mining Company the sum of $737.83, with interest thereon at the rate of five per cent from and after December 3, 1894, and to the Steele-Wedeles Company the sum of $212.38, with interest thereon at the rate of five per cent from and after December 3, 1894, and the costs of said sale; that the balance of said property, or the proceeds thereof, shall be held by said receiver

subject to the further order of this court. It is further ordered, adjudged and decreed, that if said John J. Knickerbocker, George G. Newbury and Ellis Hagenbuck, as executors and trustees as aforesaid, shall fail to make said payment or to restore said furniture and fixtures to the receiver herein within ten days from the entry of the order as aforesaid, this court will, upon proper application, make such further order for the enforcement hereof as may be necessary and proper, and for the purpose of this order the court does retain jurisdiction hereof and of all the parties hereto."

The amount involved in the intervening suit being less than $1000.00, the Appellate Court has granted a certificate of importance.

KNICKERBOCKER & SMITH, for appellants:

When it becomes necessary for a court of chancery to take possession of property which is the subject of litigation by placing it in the hands of a receiver, all expenses incident to its safe keeping and preservation are properly chargeable against it; and if there be no income, such expenses will be paid out of the proceeds of the *corpus* before distribution to lien or other creditors. It does not follow, however, because property of a private corporation or a natural person may be thus protected and preserved before sale, that in order to raise money to operate it for profit a court may place a charge upon it in advance of existing liens. *Farmers' Loan Co. v. Coal Co.* 16 L. R. A. 603.

When the property of private corporations or of individuals has been placed in the hands of a receiver, all expenses for safe keeping and preservation are properly payable out of the income, if there be any, or if there be none, then out of the proceeds of the *corpus* of the estate when sold. But this necessary power by no means includes authority, in such instances, to allow the creation of liens through the medium of receiver's certificates,

which will take priority over existing antecedent liens. *Hooper* v. *Central Trust Co.* 29 L. R. A. 272.

A court of equity is bound to respect legal rights and prior acquired liens. *Roseboom* v. *Whitaker*, 132 Ill. 81; *Trust Co.* v. *Smith*, 158 id. 417.

JOHN S. COOPER, also for appellants:

The receiver's possession is subject to all valid and existing liens upon the property at the time of his appointment, and does not divest a lien previously acquired in good faith.    High on Receivers, sec. 138.

A sale by a receiver of partnership property mortgaged by the firm gives to the purchaser only such interests as the firm itself had in the property, and does not divest or impair the paramount lien of a stranger to the action in which the receiver was appointed. High on Receivers, sec. 191.

A judicial sale is the act of the court.    The master is employed to carry out the decree of the court, and his acts under the decree, when regular, are considered those of the chancellor.    *Bonza* v. *Rowe*, 30 Ill. 200.

Unless the judicial sale shall be on terms which require the purchaser to pay the debts or charges of the receiver, the purchaser takes the property freed therefrom. *Hicks* v. *Railway Co.* 62 Tex. 38; *White* v. *Railroad Co.* 52 Iowa, 97.

Since a receiver has no power to make contracts without the authority of the court, all persons contracting with him are chargeable with knowledge of his functions in this regard, and contract at their peril.    High on Receivers, (2d ed.) sec. 186, and cases cited.

MORAN, KRAUS & MAYER, for appellees:

When it becomes the duty of a court of equity to take property under its own charge, through a receiver, the property becomes chargeable with the necessary expense incurred in taking care of and saving it, including the

allowance to the receiver for his service. *Heise* v. *Starr*, 44 Ill. App. 406; *Beckwith* v. *Carroll*, 56 Ala. 12; Beach on Receivers, sec. 771; 2 Daniell's Ch. Pr. 1753; High on Receivers, sec. 796.

Where the receiver's appointment was unauthorized, the courts have made a distinction between the disbursements and the compensation of the receiver, taxing the former against the fund, and the latter, or a portion of it, against the party who procured the appointment. *French* v. *Gifford*, 31 Iowa, 428; *Brundage* v. *Home Savings Ass.* 39 Pac. Rep. 669; *St. Louis* v. *Gas Light Co.* 11 Mo. App. 237; 87 Mo. 233.

The expense of administering and preserving property in the hands of a receiver is to be charged first upon the net income, and if that be not sufficient, then upon the property itself, or its proceeds upon sale. *Ellis* v. *Vernon Ice Co.* 86 Tex. 109; *Espuella Land Co.* v. *Bindle*, 11 Tex. App. 262; *Petersburg Savings Co.* v. *Dellatorre*, 70 Fed. Rep. 643.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question in this case relates to the right of a party, furnishing supplies to a receiver, to enforce payment for such supplies against the fund or property in the hands of the receiver.

The material facts are set forth in full in the decree itself. The record in the case contains no certificate of evidence. It must, therefore, be assumed that the findings of the decree were sustained by sufficient evidence upon the hearing below. "Where the evidence is not preserved in the record, either by a bill of exceptions or by a certificate of evidence, the facts recited in the decree must be taken to have been found upon sufficient evidence." (*Schuler* v. *Hogan*, 168 Ill. 369).

Among the facts recited in the decree are the following: Before Gore filed the bill in this case against Heff-

ron for an accounting, and to dissolve their partnership, Gore and Heffron had executed a trust deed to secure a large indebtedness of more than $100,000.00 upon said hotel and the furniture and fixtures therein. Under proceedings to foreclose said trust deed a decree of foreclosure was entered, and thereunder on March 15, 1894, said hotel building was sold to appellants for $95,000.00, and said furniture and fixtures were sold to appellants for $9250.00. This sale was afterwards confirmed. Prior thereto, the first receiver, appointed in the suit between the partners, was appointed by agreement of both parties. The second receiver appointed in the cause was appointed upon the motion of the complainant, Gore. The receiver, thus appointed on the motion of complainant, acted as such from about October 1, 1891, until January 1, 1895, and was acting as such when appellees furnished the supplies in question.

On March 28, 1894, after the sale to the appellants under the foreclosure of the trust deed, an order was entered, directing the receiver to turn the furniture and fixtures over to the complainants. From this order thus entered on March 28, 1894, Heffron appealed to the Appellate Court, where the order was affirmed, but not until January 28, 1895. While this appeal of Heffron was pending, the furniture and fixtures were left in the possession of the receiver, and by the consent of the appellants and of Heffron the receiver continued to operate and conduct the hotel. It was while the receiver was thus, with the consent of the appellants, operating and conducting the hotel, and while the furniture and, fixtures were in his possession, as receiver, that the appellees furnished to said receiver the supplies in question. The appellee, the McKindley Coal and Mining Company, furnished coal to said receiver between November 6 and December 3, 1894. The appellee, the Steele-Wedeles Company, furnished groceries to said receiver between November 5 and December 3, 1894. The receiver did not cease to operate the

hotel until December 6, 1894. The decree finds, that the coal and groceries, furnished by the appellees, were necessary to enable the receiver to conduct the hotel, and were so used by him, and that the purchase thereof was proper, and was authorized by, and was in pursuance of, an order appointing the receiver.

Under the facts thus stated and thus found in the decree, we are of the opinion, that the court below decided correctly in ordering the claims of the appellees to be paid by the sale of the furniture and fixtures, in default of the payment thereof by the appellants.

It is contended by the appellants, that, by the sale of the furniture and fixtures to them in March, 1894, the property was placed beyond the reach of any charge for the receiver's expenses. Appellees did not become creditors of the receiver before the sale to the appellants, but after such sale. The purchasers of the property at the sale made in March, 1894, were not third persons, but were the executors of Gore, who was a party to the present suit. The indebtedness secured by the trust deed, under which the sale was made, was the indebtedness of Gore and Heffron. The receiver appointed in the case was appointed by agreement between Gore and Heffron. The question then is not whether the court has the power to make the expenses of the receivership a charge, superior to prior liens owned by persons not parties to the suit, in which the receiver was appointed. Gore was responsible for the creation of the indebtedness secured by the trust deed, and for expenses of the receiver. Therefore, the purchase at the foreclosure sale by the appellants, who stand in the place and stead of Gore, amounted merely to a payment, and left the property in the hands of the appellants, subject to the charge of the receivership expenses, if there was any charge for such expenses at that time. Where the owner of the equity of redemption of property purchases the same at a judicial sale under a mortgage created by himself, he does not there-

by acquire a new title, divested of liens prior to the lien under which he purchases. His purchase is nothing more than a payment of the debt, and merely relieves the property from the encumbrance thereon. "The payment by a judgment debtor of the judgment, after a sheriff's sale, extinguishes the lien; and the fact that he takes a transfer of the certificate and the sheriff's deed, instead of a certificate of redemption, cannot divest the lien of a subsequent judgment." (*McCarthy* v. *Christie*, 13 Cal. 80). "If the redemption is made by the judgment debtor, who continues to hold the estate, of course it is subject to a subsequent judgment." (*McLagan* v. *Brown*, 11 Ill. 519). When Gore, whom appellants represent, procured the appointment of a receiver over the property, he created a charge thereon for the expenses of the receivership. Hence, the appellants cannot relieve the property of that charge by purchasing it at a foreclosure sale under an encumbrance created by Gore, and for the payment of which he and his representatives are liable.

But, independently of these considerations, it must be remembered that the claims of these appellees accrued after the sale to appellants in March, 1894. It is true that, at that sale, the appellants purchased the furniture and fixtures for $9250.00 and that on March 28, 1894, an order was entered, directing the receiver to turn the same over to appellants. But, pending an appeal from this order, the appellants themselves consented that the furniture and fixtures should remain in the possession of the receiver, and that the receiver should continue to operate and conduct the hotel. Not only so, but the appellants, on the 7th or 8th of November, themselves filed a petition before the court for an order, directing the receiver to include the said furniture and fixtures in a lease to be thereafter made, which lease was to take effect on December 6, 1894. This was a recognition of the right of the receiver at that time to dispose of the furniture and the fixtures by a lease. The appellants are estopped

from saying, that appellees should not be paid for the coal and groceries, furnished by them to the receiver, when the receiver was running the hotel with their consent and with their furniture and fixtures. It is impossible to conceive how a hotel can be operated properly without coal and without groceries.

Such being the facts, what is the law applicable to them? "When it becomes the duty of a court of equity to take property under its own charge, through a receiver, the property becomes chargeable with the necessary expenses incurred in taking care of and saving it, including the allowance to the receiver for his services. He is the officer and agent of the court, and not of the parties; and it is a right of the court, essential to its own efficiency in the protection of things so situated, to keep them under its control, until such expenses and allowances are paid or secured to be paid." (*Beckwith* v. *Carroll*, 56 Ala. 12; Beach on Receivers, sec. 771; High on Receivers, sec. 796). Mr. High, in his work on Receivers, at section 796, after stating the doctrine that, when a court of equity takes property under its charge by appointing a receiver, the property itself is chargeable with the necessary expenses of the receivership, says: "And, in such case, the person, who, under the final decree of the court, acquires the property, or its proceeds, acquires it *cum onere* and chargeable with the amounts due to the receiver for services and advances."

The object of appointing a receiver is to preserve the property for the benefit of all parties interested. Sometimes this object is best attained by continuing a business. When this is done, the court has the right, although it should exercise such right with great caution, to make the expenses of such business chargeable upon the *corpus* of the property, if the income is not sufficient to pay the same. Of course, such expenses must be charged first upon the net income, but, when that is not sufficient, they may be charged upon the property itself, or upon

its proceeds after sale. It has been held that, although this authority of a receiver to incur indebtedness, in order to keep the business a "going concern" until the rights of the parties are adjusted and a sale is effected, ordinarily arises only in cases of railroad companies; yet the same rules may be applied in other cases under like circumstances. (*Hopfensack* v. *Hopfensack*, 61 How. Pr. 498; *Ellis* v. *Vernon Ice, Light and Water Co.* 86 Tex. 109; *Espuella Land and Cattle Co.* v. *Bindle*, 11 Tex. Civ. App. 262).

In *Thornton* v. *Highland Avenue and Belt Railroad Co.* 94 Ala. 353, a receiver was appointed, who was authorized to conduct and run a hotel, and, while he was operating the hotel, he became indebted for groceries; and it was there held, that such debt constituted a proper charge, first on the income of the property, and then upon the *corpus*. It was there said: "The party contracting with the receiver looks to the *rem*, the fund or property *in gremio legis*, backed by a pledge of the court that it shall be liable for all costs and expenses legitimately incurred in pursuance of its orders and decrees. * * * Under such conditions, the court should never surrender its custody of the property, or discharge the receiver, until all obligations incurred by him in the proper discharge of his duties have been adjusted and provided for. * * * The order of the court, made in pursuance of an agreement made between the original parties, as averred in the petition, by which the property was placed in the hands of the complainant, did not deprive the court of authority to resume possession and control of it, for the purpose of enforcing all claims to or liens upon it, the result of its own orders or decrees." (*Highland Avenue and Belt Railroad Co.* v. *Thornton*, 105 Ala. 225).

The judgment of the Appellate Court and the decree of the Superior Court are affirmed.

*Judgment affirmed.*