GUSTAV W. LEMBECK

*v.*

JARVIS TERMINAL COLD STORAGE COMPANY.

[Argued October 17th, 1904. Decided December 9th, 1904.]

1. Mortgagees, bondholders and lienors of a corporation take subject to the effect of insolvency proceedings which may subsequently be commenced, and in which a receiver may be appointed of all the corporate assets, including the property upon which the encumbrance has been so acquired.

2. A receiver and his counsel, appointed in a suit begun on behalf of the stockholders and general creditors of an insolvent corporation, but which from the start was practically a mortgagee's suit to foreclose liens and adjust priorities, should be allowed the same compensation which they would have been entitled to receive if they had been appointed in a suit to foreclose the mortgage.

3. An allowance of $4,000 to receivers, and $2,500 to their counsel, which, with the costs and disbursements incurred, was a little more than four per cent. on the amount administered, is not excessive, and should be allowed in insolvency proceedings, where the plant of the insolvent corporation is equipped for its particular work, so that it is necessary to operate the same to preserve it, and there is considerable work and skill involved in selling the property and protecting the various equities.

On application for allowance of compensation to receivers of an insolvent corporation and. to their counsel on settlement of receivers' account.

*Mr. Willard C. Fisk,* for the receivers.

*Mr. Gilbert Collins,* for the Erie Railroad Company, mortgagee.

*Mr. John M. Enright,* for the creditors.

*Mr. William Brinkerhoff,* for the Commercial Trust Company of New Jersey, trustee.

*Mr. Pierre F. Cooke,* for. the bondholders, &c.

STEVENSON, V. C. (orally).

It is difficult to do exact justice in a case of this sort in awarding compensation to the receivers and to counsel, but I shall endeavor to make the best approximation that I can.

The case is peculiar. The case was started on behalf, undoubtedly, of the stockholders and creditors of this corporation, and if the cause had proceeded, as such causes generally do, these questions would not have been before the court; the receiver would have taken the property subject to the liens that were upon it, and would have sold that property, and what he got would have been the fund out of which, primarily, he would receive his compensation. If he did not get any fund he might not get any compensation; it would be what has been termed a dry receivership, and it is proper in such cases for the complainant to be compelled, oftentimes, to put up a bond to secure the fees of the receiver whom the court appoints at his instance.

But in this case I think I may rely on my memory to say that practically from the start it was apparent to all parties interested that there was no equity to administer for the general creditors at all, and that the proper course to take was to have the property sold under this statute and have all the proceeds brought into court by the receiver, to await the same sort of adjudication in regard to the title to the fund which would be made upon a suit or suits of foreclosure—suits to foreclose mortgage liens. From the time when that situation was declared, and I think it was apparent at the start, this whole proceeding was practically converted into a mortgagee's suit—lienors' suit—to foreclose their liens, have their priorities adjusted, to have the property sold to the best advantage, and meanwhile have the property preserved for them—not preserved for the general creditors. The general creditors practically disappeared from view at the very start.

Every person who accepts a mortgage, or a bond secured by a mortgage, from a corporation, or in any way acquires a lien upon the property of a New Jersey corporation, takes subject to the effect of insolvency proceedings which may subsequently be commenced and in which a receiver may be appointed of all the

corporate assets, including the property upon which the encumbrance has been so acquired. This mortgagee—these bondholders —accepted their securities knowing that in future insolvency proceedings against this cold storage company the legality of their encumbrances might be called in question, the whole property might be administered by the receiver, and not the equity only, and their liens, if found valid, would attach to the proceeds which would result from the receiver's sale. Where, under our statute, the receiver sells not the equity but the property itself, he is acting not for the stockholders or unsecured creditors necessarily, but for whatever class of creditors may finally be adjudged entitled to the fund in his hands. Where this kind of a sale is had under our statute the proceedings amount to a foreclosure suit for the benefit of the encumbrancer, in case the validity of the encumbrance is established.

In this case not one dollar of compensation is allowed out of the fund to the receiver or to his counsel which was not earned in the care and sale of the mortgaged property. If, instead of taking advantage of the insolvency proceedings to realize upon their pledge, these bondholders, or rather their trustee, the mortgagee, had filed a bill, is it not perfectly plain that precisely this same receivership, with its attendant expenses, including compensation to counsel, would have been incurred? My recollection is that the mortgage covered the whole plant practically as a going concern, but if it did not, then the encumbrancers may have secured a more valuable receivership in insolvency proceedings than they would have been able to get in their own suit to foreclose.

The rule upon which I have acted in cases of this class a number of times is to allow to the receiver and his counsel at least the same compensation which they would have been entitled to receive if they had been appointed in a suit to foreclose the mortgage or other encumbrance which received the benefits of the receiver's care and the receiver's sale. Where the encumbrance is finally adjudged invalid, no difficulty arises because the entire proceeds of sale stand as a fund for the benefit of the unsecured creditors. But where the encumbrance is finally adjudged valid, then that part of the services of the insolvency

receiver and his counsel which have directly benefited the encumbrancer, and have corresponded precisely with similar expenses which he would have been obliged to incur on his own behalf in his own suit, plainly should be charged against the fund upon which the encumbrance is fastened. Where the insolvency receiver has had other assets besides those found to be subject to the mortgage, the effort, of course, should be to make each class, the encumbrancers and the general creditors, pay for the services of which it derived the benefit.

I do not know that there has been any published adjudication on this subject, but the matter came up directly before the late Chancellor McGill in the case of *Boehme, Receiver of the New York Silk Ribbon Manufacturing Co.,* v. *Rall,* about ten years ago. *51 N. J. Eq. (6 Dick.) 541.* In that case the mortgagees accepted from the corporation a mortgage of doubtful validity upon the entire assets, and thereupon the corporation was immediately put into insolvency and a receiver was appointed. Before the mortgagees could file a bill to establish and foreclose their mortgage, the receiver filed a bill to have it declared void. Meanwhile the receiver was obliged to care for the plant and operate it for the completion of goods, all of which were covered by the mortgage, if there was any mortgage. After a time the statute was invoked and the whole property was converted into cash by the receiver. The litigation between the receiver and the mortgagee then proceeded to a conclusion, and the result established the mortgage as a valid lien. The entire fund in the hands of the receiver was thus subjected to the mortgage and was not sufficient to pay the amount due thereon. Nevertheless, upon an application by the receiver, which was resisted, Chancellor McGill allowed substantial compensation to the receiver and to his counsel. Whether the late chancellor, in fixing the counsel fee, consciously compensated the receiver's counsel out of the mortgagees' money for trying to defeat the mortgage, I do not know. I have never been obliged to decide this precise point, and it is not raised in this case, because no allowance is made to the receiver or his counsel for any services rendered to the stockholders or general creditors in any proceeding hostile to the interests of any mortgagee, bondholder or lienholder who will

take any part of the fund in the receiver's hands, or who would receive any part thereof if no compensation were allowed to the receiver or his counsel. The allowance is made on the theory that the encumbrancers who have had the advantage of this receivership to have their pledge cared for, kept in shape for sale and sold to advantage, and have thus been saved similar expensive proceedings in a suit on their own behalf, ought in equity to pay for the advantages which they have received. The fund has been administered by this court through its officers for their benefit, and they acquired their encumbrances subject to the very condition which has occurred.

The receivers had a very difficult and delicate problem before them when they took possession of this plant. It was in peculiar shape. A magnificent factory was built and equipped for this peculiar work. The corporation failed, as I recall it—at least, the indications were that the corporation failed because they did not have any capital to carry on the business after they had their plant installed. Well, the receivers took hold of it, and then they could not stop the business; if they did, great damage would follow, not merely to the large amounts of vegetables and meats on storage, but to the plant itself from the suspension of the business. The plant had to be kept in operation for its own preservation. I do not think that the situation of a railroad more imperatively requires from a receiver its operation than the situation of this plant called for such service on the part of these receivers, and the indications are that they performed their duties faithfully and with skill. They have had, and their counsel has had, a great deal of work in getting this property sold, and sold in such a shape that all of the equities would be protected, and these bondholders would not be obliged to put up more money than was necessary; and the whole proceedings have been handled with great care to protect these bondholders from unnecessary hardship and loss, and to protect the lienors to the extent that they had a claim, and of course to protect the Erie railroad, the mortgagee, to the extent to which it may have a claim. The receivers and their counsel did all this really for the mortgagees, the bondholders and lienholders; and there is hardly any part of their work, as I now recall, the work of the receivers

or of their counsel, which can be attributed to the insolvency proceedings in their original form. Practically there is nothing of their work which is to be so classified. There may be a little. I don't know about how it would be about this bill of costs; perhaps the very earliest items in it would belong to the insolvency proceedings pure and simple. Do counsel desire to have that bill of costs examined and the portion disallowed which preceded the appearance of the lienors and bondholders? I think it is hardly worth while; and really, the costs of the filing of the bill saved the bondholders the costs of filing a foreclosure bill.

Mr. Fisk—This bill was filed by Mr. Lembeck, representing a committee of bondholders.

The Court—Yes, it is very plain that even the bill of complaint itself and the earliest costs incurred practically belong to the mortgagees and correspond exactly with the costs of a foreclosure bill, and saved them the costs of a foreclosure bill—took the place of a foreclosure bill. I don't think any distinction can be drawn between the possible two kinds of services rendered by these two receivers and their counsel.

As to the amount asked for the two receivers, no specific objection is made. They certainly have had considerable work to do, and work that required a good deal of skill and involved a good deal of responsibility. Certainly there is a large amount of property involved, and property that had to be handled with great care. It does not strike me that the total amount asked for, $4,000, is excessive. The amount that counsel asks for, $2,500, does not strike me to be beyond what is the fair compensation. I know myself that a good deal of work has been done; services have been performed involving a great deal of work and skill on the part of counsel, for the benefit of all these different interests, and the whole business has been done to the satisfaction of all those interests; and at the end we have two or three sharp questions, which can be litigated and decided on petition, and in which the receivers have no concern whatever.

The total amount—$6,500, and the few dollars of costs and disbursements—$180 about of actual disbursements—is a little more than four per cent. on the amount administered. It does

not seem that the charge is excessive, and therefore those charges will be allowed..

Mr. Fisk can take an order approving this report as against all of these parties that appear here—the Erie railroad, Mrs. Jarvis, Mr. Enright's clients and the others; and then all these other matters can be saved and the parties may be permitted to present them to the court by petition.