CENTRAL TRUST AND SAVINGS COMPANY, Trustee in a Mortgage executed by Chester County Electric Company,

*vs.*

CHESTER COUNTY ELECTRIC COMPANY.

*New Castle, Aug. 5, 1911.*

Courts of equity have to a limited extent made the expenses of a receiver of a public corporation a lien upon its property superior to prior liens. Such expenses should only be charged against the corpus when the income is insufficient.

While receivers' certificates may be authorized for funds to operate a *quasi* public corporation, they should not ordinarily be authorized for private business corporations, if the certificates are to have priority over mortgage liens.

Where the trustee for bondholders did not consent to a receivership of an electric power company, and himself instituted foreclosure suit, and purchased the property for the bondholders, and the only service performed by the receiver was to conserve the mortgaged property and improve its condition somewhat, the cost of the receivership should not be paid out of the proceeds of the foreclosure sale, except such expenses in conserving the property and improving it as directly benefited the bondholders, and this should be paid, even if the proceeds of the sale be insufficient to pay the bonds.

Where a general receiver has assets, other than mortgaged property, belonging to the corporation, sufficient to compensate himself and counsel, such expenses should be apportioned between the general creditors and the bondholders, inasmuch as he acts for the general creditors and stockholders, as well as the mortgagee, in selling mortgaged premises, so that each should pay for his services proportionately to the benefit derived; but where the mortgaged property is sold in a separate proceeding by the mortgagee, and not by the receiver, expenses of the receivership should only be allowed out of the proceeds of the mortgage sale so far as the receiver's services directly benefit the mortgagee; so that expenses for the services of counsel for a receiver of an electric company in successfully resisting an application to have it adjudicated a bankrupt, rendered without authority of the court appointing the receiver, should

not be paid out of the proceeds of the sale of mortgaged property by bond-holders, such service not having benefited the bondholders; nor should expenses of services rendered to the receiver in assisting a bondholder to prevent a confirmation of the sale of mortgaged property for the bond-holders be paid out of the proceeds of such sale, such services being against the interest of the bondholders; but expenses incurred by the receivers in caring for the mortgaged property and improving it before its sale, ren-dered with the consent of the bondholders, should be paid out of the proceeds of the sale.

If a receivership was beneficial to the bondholders of an electric power company, the costs of the cause in which the receiver was appointed should be paid from the proceeds of mortgaged property sold for the bondholders.

Petition for Payment of Allowances to Receiver and his Counsel out of Funds Paid into Court in Fore-closure Proceedings. The matter before the Court is as to allowances to the receiver of the Chester County Electric Com-pany for compensation for himself and his counsel. On March 26th, 1909, by a bill filed in Kent County by Elisha W. Meloney, a holder of one of the bonds of the company, and a stockholder thereof, William M. Hope was appointed receiver *pendente lite* of the company, a Delaware corporation, on the ground of its insolvency. The company owned real estate, two plants for generating electricity, operated by water power, and poles and wires to conduct the electricity to Pennsylvania, where it was sold. In Pennsylvania there was another corporation for the Pennsylvania end of the business. After the appointment of the receiver in Delaware, he and another person were appointed in Pennsylvania receivers for the Pennsylvania corporation. All the income from the operation of the Delaware plant was received and disbursed for operating expenses by the Pennsyl-vania receivers. They accounted to the Pennsylvania Court and were allowed some compensation there from moneys col-lected by them. After paying these allowances there was a balance of $20, which by order of the Pennsylvania Court was paid over to the Delaware receiver; and that sum is the only source from which the Delaware receiver and his counsel can be paid. No accounting has ever been made to this Court,

except the exhibition of the account passed in Pennsylvania. All the property of the Delaware company was mortgaged to a trustee to secure bonds, of which $190,000 were issued, and the mortgaged property was grossly inadequate security for the bonds. The receivers continued to operate the plant for about one year, and until the mortgaged property was sold by William M. Hope, receiver, as one of the defendants, and not as receiver, by order of this Court made in this cause in New Castle County, which was one brought by the trustee of the bondholders to foreclose the mortgage. The amount realized by the sale was very small in proportion to the debt, and the purchaser who represented the bondholders paid into Court part of the purchase price to meet the costs and expenses of the receivership. From the proceeds of sale the costs of the suit, allowances to the trustee under the mortgage and its counsel, and the Delaware receiver and his counsel for services in that suit, have been paid. In the cause in Kent County in which he was appointed, the Delaware receiver, who subsequently was made a permanent receiver, asked for and was allowed compensation for himself and counsel employed by him, and the same were made in that cause; but no order was made for the payment thereof, as there was only twenty dollars available for the purpose. Now he has filed his petition in this cause, the foreclosure suit, by leave of the Court, asking that the allowances made for himself and his counsel be paid from the proceeds of sale of the mortgaged property sold in this cause. It is alleged in his petition that the plant was improved by the receivers, as well as being cared for, and operated until the sale by the receiver under the foreclosure proceedings. The petition is that of the Delaware receiver alone, and not of the two receivers who actually administered the property under appointment from the Pennsylvania Court. Objection to the allowance was made by the trustee for the bondholders at the argument of the petition, though no answer to it was made.

*John R. Nicholson and Arley B. Magee*, for the petitioner.
*Saulsbury, Ponder and Morris*, for the trustee.

THE CHANCELLOR: The insolvent corporation was a public service corporation and a continuance of its operation was essential to a proper protection of the property of the company and the maintenance of its franchises. The receivers took charge and operated it, improved its physical condition, and so conserved it until the sale under the foreclosure proceedings. Considering the matter as though the plant and property of the company had been in Delaware, operated for about one year by a Delaware receiver, conserved as a going concern by him, and its physical condition somewhat improved; and considering that subsequently in another suit by the trustee mortgagee the property and plant had all been sold to pay the bonds secured by the mortgage, and that the proceeds of the sale were grossly inadequate for the payment of the bonds, the question is: Has this Court power to diminish the fund due the lienors by the payment of the allowances to the receiver for services rendered by himself and his counsel?

Courts of equity have to a limited extent, and sparingly, exercised the power to make the expenses of a receiver of a public corporation a lien upon the property of the company, superior to prior liens. *Makeel v. Hotchkiss*, 190 *Ill.* 311, 315, 60 *N. E.* 524; *Beckwith v. Carroll*, 56 *Ala.* 12; *Cake v. Mohun* 164 *U. S.* 311. Such expenses should be charged first against income, but when that is insufficient, may be charged against the *corpus*. *Knickerbocker v. McKindley Coal Co.*, 172 *Ill.* 535, 50 *N. E.* 330. Indeed, it seems clearly established now, that though receivers' certificates for funds to operate the business of a corporation may be authorized for *quasi* public corporations, they should not be authorized for the purpose of private business corporations, if the certificates are given priority over mortgage liens for bondholders or otherwise. *High on Receivers*, 312b; *Hanna v. State Trust Co.*, 70 *Fed.* 2, 30 *L. R. A.* 201; *U. S. Investment Co. v. Portland Hospital*, 40 *Ore.* 523, 67 *Pac.* 194, 56 *L. R. A.* 627. There are cases in which courts of standing have denied compensation to a receiver, when to do so would diminish the fund which would otherwise come to the holders of liens on the property administered by the receiver. In *Lammon v. Giles*, 3 *Wash. T.* 117, 13 *Pac.* 417, 420, an insol-

vent debtor filed a petition in insolvency, and about the same time there were several attachment suits commenced by unsecured creditors, and the personal property was taken possession of by the sheriff. Then the insolvent applied for a receiver and one was appointed and went into possession of the property and held and managed the same. A mortgagee of personal property, by leave of the Court, foreclosed his mortgage, bought in the property, paid the costs and satisfied his mortgage. Then the receiver closed his accounts and the question was whether the mortgaged property was liable for the costs and expenses of the receivership. The Court held not, for it would be to the prejudice of the mortgagee, where the property was not more than sufficient to pay the debt secured by the mortgage on the property. The Court said:

"A mortgagee of personal property not more than sufficient to pay his debt, is the only one who needs to borrow trouble about its preservation. If one interefere with it officiously under the plea that he has rights therein but inferior to those of the mortgagee which require the sequestration of the property, he ought to pay all the expenses of such interference if it turn out that the property is insufficient, after satisfying the mortgage, to do so."

The Court also said that a receiver should not be appointed where the property was no more than sufficient to pay the mortgage debt. In *Lane v. Washington Hotel Co.*, 190 *Pa. St.* 230, 42 *Atl.* 697, a receiver of a hotel was appointed and goods in it which were subject to the landlord's lien for rent, were sold by the receiver. *Held*, that the landlord had a lien for rent on the fund raised by the sale, and it could not be reduced by any part of expense of the receivership. To the same effect was the case of *Moore v. Lincoln Park, etc., Co.*, 196 *Pa. St.* 519, 46 *Atl.* 857, where the receiver of a steamboat company sold vessels of the company on which there were maritime liens fixed prior to the receivership, and it was held that the fund for the lien creditors could not be diminished for the payment of any part of the commissions of the receiver.

The case of *Makeel v. Hotchkiss*, 190 *Ill.* 311, 60 *N. E.* 524, was one where a receiver was appointed for a hotel in a suit concerning ownership of it, and the receiver was author-

ized to conduct the hotel. Afterwards the hotel was sold by a master in a foreclosure suit brought by the holder of a mortgage, who was not a party to the receivership. The proceeds of the sale were only enough to pay the mortgage debt and costs. The Court refused to make the receiver's charges, disbursements and expenses for running the hotel a paramount lien superior to that of the mortgagee. The prior case of *Knickerbocker v. McKindley Coal Co.*, 172 *Ill.* 535, 50 *N. E.* 330, was distinguished, because there the prior mortgagee was a party to and consented to the receivership. The case of *Ephraim v. Pacific Bank*, 129 *Cal.* 589, 62 *Pac.* 177, was one where in a suit pending, a receiver was appointed for a defendant company, after suit had been brought to foreclose a mortgage of the company. *Held*, that a receiver of property subject to a mortgage in favor of one not a party to the action holds it subject to any judgment which may be rendered in an action to foreclose the mortgage; and the right of the receiver attaches only to the surplus, if there be any arising from the sale of the property. If there be no surplus, and the title is lost as the result of the foreclosure, there is a total insufficiency of the fund, and this authorizes the receiver to look for his compensation to the parties at whose instance he was appointed. In *Tome v. King*, 64 *Md.* 166, 21 *Atl.* 279, there was a receiver appointed to operate a street railway line in a suit by the trustees for bondholders under a second mortgage, and the property was sold by the receiver subject to the first mortgage bonds; and it was held that as the receiver was appointed solely at the instance and for the benefit of the second mortgage bondholders, and the trustee who sold the property was appointed to sell exclusively for the benefit of the same parties and not for the benefit of the first mortgage bondholders, upon no principle of justice or reason could the first mortgage bondholders be assessed to pay any part of the compensation allowed the receiver and trustee. In *Frick v. Fritz*, 124 *Iowa* 529, 100 *N. W.* 513, a creditor had attached cattle, etc. On his application a receiver was appointed to take charge of the cattle, etc. Then a holder of a chattel mortgage on the cattle, antedating the attachment, intervened and asked that the lien of the mortgage be declared

superior to the attachment. By agreement the cattle were sold without prejudice. The intervenor succeeded. Then the question arose as to the payment of the costs of the receivership. *Held,* that where a prior mortgagee is not a party to a proceeding for the appointment of a receiver, but intervenes simply to assert his right under the mortgage to property in the hands of the receiver, and suceeds, the costs should not be paid from such property to the detriment of the mortgagee, but should be taxed against the party invoking the receivership. But where it appeared that the mortgagee derived a benefit from the receivership, he should be required to contribute to the costs.

"Had it been made to appear that *in* making claim to the proceeds of the property realized by means of the receivership, they had availed themselves of any benefit resulting from such receivership, they might, no doubt, have been properly required to submit to an equitable apportionment of the costs in accordance with the benefit received." Citing *Espuella Land Co. v. Biddle,* 11*Tex. Civ. App.* 262, 32 *S. W.* 582; *Highley v. Deane,* 168 *Ill.* 266, 48 *N. E.* 50, and *Cutler v. Pollock,* 7 *N. D.* 631, 76 *N. W.* 235

The case of *Lembeck v. Jarvis,* 68 *N. J. Eq.* 352, 356, 59 *Atl.* 565, is cited by the solicitor for the petitioner as an authority for the allowance asked for, but it is not. There, there was a receivership of an insolvent corporation and the whole of its assets were in fact converted into money by a sale by the receivers. The mortgage for bondholders was concededly greater than the value of the property and the general creditors had no real interest in the assets. This the Court said was apparent from the start of the proceedings, and it was regarded by the Court as practically a mortgagee's suit. The theory of the Court in making the allownace is thus stated:

"The allowance is made on the theory that the incumbrancers, who have had the advantage of this receivership, to have their pledge cared for, kept in shape for sale and sold to advantage, and have thus been saved similar expensive proceedings in a suit on their own behalf, ought in equity to pay for the advantages which they have received. The fund has been administered by this Court, through its officers for their benefit, and they acquired their incumbrances subject to the very condition which has occurred."

It was truly said that mortgagees of corporations take their liens subject to the right of the Court to appoint receivers of the company, and to take possession of and administer its affairs, including a sale of the mortgaged property; but it was also found that the mortgagee chose to accept the benefit of the proceedings instead of taking its own for the collection of its debts. The Court said emphatically:

"In this case not one dollar of compensation is allowed out of the fund to the receiver or his counsel which was not earned in the care and sale of the mortgaged property."

A different principle is applicable where, notwithstanding the evident inadequacy of security for the bonds of the company, the trustee for the bondholders, instead of submitting to a full administration of the mortgaged property of the company by the receiver, instituted its own suit to foreclose the mortgage, and pursuant thereto a judicial sale is made and the property purchased for the bondholders. All that the receiver of the Chester County Electric Company did was to conserve the mortgaged property and somewhat improve its condition. But the mortgagee was not a party to, and did not consent to, the receivership, so far as appears, and therefore is entitled to have the mortgaged property undiminished by the costs and expenses of the receivership, except as to so much of such expenses as directly benefited it. Vice Chancellor Stevenson said in the above case:

"Where the insolvency receiver has had other assets besides those found to be subject to the mortgage, the effort, of course, should be to make each class, the incumbrancers and the general creditors, pay for the services of which it derived the benefit."

Where, as here, it appears that a receiver has been appointed for an insolvent corporation, and the receiver has rendered services in caring for the property of the company, keeping it in operation (especially if it be a public service corporation), and improving its condition, and the whole of the plant of the company is afterwards sold in a foreclosure suit brought by the trustee under a mortgage to secure bonds of the company, the general receiver and his counsel will be enti-

tled to some compensation from the fund arising from the sale of the mortgaged property, if the other general assets are not sufficient for a proper compensation, even though the proceeds of sale be insufficient to pay the bonds.

Where the general receiver has assets other than the mortgaged property sufficient to properly compensate him and his counsel, there should be an apportionment of such between the general creditors and incumbrancers, each class paying for the services of which it derived the benefit. *Lembeck v. Jarvis*, 68 *N. J. Eq.* 352, 59 *Atl.* 565, 566; *Frick v. Fritz*, 124 *Iowa* 529, 100 *N. W.* 513.

Where the general receiver sells the mortgaged premises, and sells, not the equity over the lien, but the property itself, he is acting for the general creditors and stockholders as well as the mortgagee, and for the benefit of whoever may be finally adjudged to be entitled to the fund in his hand. *Lembeck v. Jarvis, supra.* So there should be a separation, if it can be done with approximate certainty and fairness, of the service rendered to each class, and each should pay for the services proportionate to the benefit derived by each. Where, however, the receiver does not sell the mortgaged property, but it is sold in a separate proceeding by the mortgagee, then the consideration is as to the value of the services of the receiver to the mortgagee. A different situation is presented when the receivership is terminated because of the invalidity or impropriety of the original appointment, and in such case the decisions are conflicting as to the responsibility for the costs and expenses of the receivership.

It is clear, then, that where there are valid liens upon the property of which a receiver takes possession, the mere fact of his appointment, or even of an order of court authorizing the receiver to conduct a business, do not of themselves give to obligations which he might incur a preference over the prior liens. The security for valid liens should not be impaired. If the security is sufficient so that there is no margin of value in the property for the general creditors, the court may hesitate to appoint a receiver on application of general creditors, or to continue the receivership after lienors have an opportunity to

protect their own interests. Receiverships are not always the appropriate method of collecting debts secured by mortgages. If the lienors adopt the existing receivership as a means of collecting their debts, and do not with reasonable promptness pursue their own remedies after the appointment of receivers, they should bear their part of the expenses of the receivership, including compensation to the receiver for himself and his counsel. If the lien creditor within a reasonable time uses other methods of enforcing his lien, and the property theretofore in the care of the receiver is sold in that proceeding for less than the lien debt, then it is material to consider what benefit the receivership was to the lien creditor prior to the sale by the lienor.

The services of A. D. Harrington, Esq., were not beneficial to the bondholders. As counsel for the receiver he successfully resisted an application made to have the Chester County Electric Company adjudicated bankrupt, and this was his chief and probably sole service to the receiver. But this was done without authority of the Delaware Court, which appointed the receiver, and the service does not seem to have been a benefit to the bondholders. The payment for this service should not be put upon the bondholders.

The services rendered to William M. Hope as Delaware receiver by A. B. Magee, Esq., consisted largely in his assistance to the effort of Elisha W. Meloney, one of the bondholders, to prevent a confirmation of the sale made by William M. Hope, receiver, as one of the defendants, and not as receiver, by order of this Court in this cause. It does not seem right that the bondholders, for whom the mortgaged property was purchased, should be called on to pay for legal services rendered to their opponent. This difficulty is referred to in *Lembeck v. Jarvis, supra,* as embarrassing to the Court.

The bondholders have availed themselves of the services of the receiver in the care of the plant, the physical condition of which was somewhat improved. It was eight months from the time the Delaware receiver was appointed and took charge of the mortgaged plant until the bondholders asked the trustee

Central T. & S. Co. *vs.* Chester County Elec. Co. 257

Opinion.

to proceed to collect the mortgage, though at that time there had been defaults in two payments of interest, viz., that due August 1st, 1909, and February 1st, 1910. The bill was filed April 28th, 1910, and thereafter the foreclosure suit proceeded with diligence on the part of the trustee. But during the eight months of inaction by the bondholders, whose security was obviously and patently insufficient, they allowed the receiver to care for, operate and improve the plant. Such services are clearly beneficial to the mortgagee and should be compensated, if it has not already been done in the Pennsylvania receivership. In the light of what is before the Court, it seems clear that the Delaware receiver, William M. Hope, has not been sufficiently compensated, in the Pennsylvania case, and that the mortgagee bondholders should bear the expense of a further allowance to him of $200, as their proportion of the compensation, which he should receive for services rendered by him in caring for the mortgaged property and which were beneficial to the bondholders.

It is proper the costs of the cause in which the receiver was appointed, amounting to $59.78, should be paid, for if the receivership was beneficial to the bondholders, the costs of the cause in which the receiver was appointed should be paid from the proceeds of the *corpus* of the estate administered. Manifestly Receiver Hope should be repaid moneys expended, amounting to $20, as stated in the petition.

The authorities have been examined and discussed in this opinion, because the matter here raised is now decided for the first time in this State, so far as the reports show.

Let an order be entered accordingly.