Julius A. Goldberg, v. Minerva Sales Company et al. Fred E. Hummel, Appellee, v. Ambassador Garage Company, Appellant.

Gen. No. 38,787.

Opinion filed June 29, 1936.

THOMAS HART FISHER, of Chicago, for appellants.

JUDAH, REICHMANN, TRUMBULL, COX & STERN, of Chicago, for certain appellee.

THOMAS J. FINNEGAN, of Chicago, for certain other appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

July 30, 1930, Fred E. Hummel was appointed receiver by the circuit court of Cook county for a Minerva automobile which was involved in litigation. September 21, 1935, Hummel, the receiver, filed his petition setting up his appointment as receiver of the automobile; that continuously from the date of his appointment until the filing of his petition the automobile was in the garage of the Ambassador Garage Company and that the garage company was claiming compensation for storage; the prayer was that the court enter an order fixing the reasonable amount of the Ambassador Garage Company's charges from July, 1930, to the date of the sale of the automobile, which had not then been sold; that the court also fix the amount of the receiver's compensation and approve

the cash disbursements theretofore made by the receiver, as set forth in the petition.

September 28, 1935, the garage company answered the petition, claiming $18 a month, or a total of $1,116, for its charges in storing the automobile, and that, pursuant to the provisions of paragraphs 45 to 52 of ch. 82 of the Illinois Revised Statutes, it had a lien superior to the claims of all others. November 27, 1935, the receiver filed his report, setting up that he had sold the automobile on November 13, 1935, for $355 cash, and that the sale was made subject to the approval of the court. December 19, 1935, the order appealed from was entered, in which it was recited that the matter came on to be heard on the report of the receiver of the sale of the automobile. The court found that the reasonable amount for storage charges which the garage company was entitled to from July 30, 1930, to and including the date the order was entered, exceeded $355. The court further found that the amount to which the receiver was entitled for sums advanced by him in connection with the receivership and expenses incurred in connection with the sale of the automobile, his fees as receiver, and attorney's fees incurred by him, exceeded $355. And it was ordered that the sale be approved and the $355 be divided equally, $177.50 to the garage company and the remaining $177.50 to the receiver, in full of all claims of the garage company, of the receiver, and his solicitor's fees.

The garage company appeals, claiming it is entitled to a lien on the $355, which lien is superior to the claim of the receiver and therefore it should have received the $355. On the other side, the petition of the receiver is that he should be paid his fees and those of his solicitor, also ''actual necessary out-of-pocket expenses exclusive of the cost of advertising for the sale,'' which expenses amount to $126, before any payment to the garage company, but in view of all the

facts he is willing to abide by the order of the court dividing the $355 equally between the garage company and himself.

The record discloses that Goldberg filed his complaint in the instant case to foreclose a lien for the amount he had paid on the contract to purchase the Minerva automobile from defendants. There was a decree in his favor which was affirmed by this court— *Goldberg v. Minerva Automobiles, Inc.*, 278 Ill. App. 217. In that case Fred E. Hummel was on July 30, 1930, appointed receiver of the automobile, which was then in plaintiff's garage. Some time prior to the appointment of the receiver Goldberg placed the car in the Ambassador garage and paid it $18 a month until the day the receiver was appointed. Since that time neither the receiver nor anyone else has paid anything to the garage company although the car has been in the garage continuously.

After the affirmance of the decree by this court, as above stated, the Supreme Court on April 17, 1935, denied leave to appeal. While the case was pending on appeal the Ambassador Garage Company brought two suits in the municipal court of Chicago to recover its charges for storage of the car. One of the suits was against Goldberg and the other against Hummel, the receiver, and storage was claimed from August 1, 1930. Those two suits were consolidated. There was a hearing before the court without a jury, and a finding and judgment against plaintiff. The court found that Goldberg was not liable for storage charges because he had paid them until the receiver was appointed. The court also held that the receiver was not liable, but on what theory we are not advised. The garage company prosecuted an appeal to this court where the judgment of the municipal court was affirmed by another Division of this court. *Ambassador Garage Co. v. Goldberg and Hummel*, No. 37, 831 [281 Ill. App. 610 (Abst.)]. In the opinion in that case it

was said: "In view of plaintiff's utter failure to urge to this court any liability on the receiver's part, it is unnecessary for us to discuss that question." The court then proceeded to state by way of *obiter dictum* that expenses incurred in connection with personal property under the control of the receiver were chargeable only against the assets in the possession of the receiver. About three months after the opinion in that case was filed, the receiver, on September 21, 1935, filed his verified petition setting up that he was appointed receiver of the automobile July 30, 1930; that he qualified and took possession of it; that a final decree was not entered in the case until March 21, 1934; that by the decree it was adjudged that unless the defendants within three days pay complainant more than $11,000, together with interest and master's fees, the Minerva automobile involved be sold for cash. The petition further sets up that the receiver was informed that no payment was made under the decree; that since his appointment he had stored the automobile in the Ambassador garage. It then sets up the two suits brought by the garage company in the municipal court and the result of them; that he received statements from the garage company for storage charges from July, 1930, to June, 1935, the garage company claiming $18 a month for storage; that he had stored the car as "dead storage" and had not taken the automobile from the garage at any time, and that the charge of $18 a month as claimed by the garage company was exorbitant. The petition then set up disbursements made by the receiver totalling $126,—$25 a year for annual premium on receiver's bond for five years and $1 for certain certified copies. The prayer was that the court fix the reasonable amount of storage charges to which the garage company was entitled, and also fix the reasonable compensation of the receiver.

September 28, 1935, the garage company filed its verified answer in which it set up *inter alia* that the

automobile was brought to the garage for "regular storage" and the customary charge was $18 to $25 a month; that prior to the appointment of the receiver, Goldberg, who placed the car with the garage company, paid $18 a month; that on August 4, 1930, Hummel, as receiver, notified it that he had been appointed receiver of the automobile, stating, "Please arrange to deliver this car to the bearer hereof, my duly authorized representative"; that the representative orally instructed the garage company to wash the car, saying he would be back for it in a few days; that on the same day the garage company sent a bill to the receiver for $18 for August, and continued to send bills to the receiver at $18 a month for approximately one year, and thereafter sent bills to him at the $18 rate every six months; that the receiver at no time made any objection to the bills but never paid anything; that on February 13, 1931, which was about 6½ months after the appointment of the receiver, it sent a letter to him stating that it had been presented with an order signed by him to deliver the car to his representative; that the representative did not take the car; that the garage bill was increasing every month and it would like to have the matter "straightened up"; there was a statement enclosed with this letter in which a charge of $18 a month was made; that the receiver made no reply from August 4, 1930, until September 21, 1935, when he filed his petition; that the automobile was always kept in regular storage and ready to be delivered at any time to the receiver; that it never received any notice to place the car in dead storage; that the charge for dead storage for the year 1930 was $18 a month; for 1931, $15 a month; for 1932, $15 a month; for 1933, $12 a month; for 1934, $10 a month; for 1935, $8 a month. The answer claimed a lien for $1,116 for the storage charges on the automobile, pursuant to pars. 45–52, ch. 82, Ill. State Bar Stats. 1935.

After the petition and answer were filed defendant on November 13, 1935, sold the automobile for $355 cash and on November 27th filed his report of the sale. December 19, 1935, the order appealed from was entered. It recites that the matter came on to be heard on the report of the receiver in connection with the sale of the automobile; that due notice had been given to all parties, and that they were present by their counsel in open court, and after argument of counsel the court found that the reasonable amount of storage charges from July 30, 1930, to December 19, 1935, to which the garage company was entitled, was in excess of $355. The court further found that the amount to which the receiver was reasonably entitled for money advanced by him for expenses in connection with the receivership, for his fees as receiver, and for his attorney's fees incurred, exceeded $355; and it was ordered that the $355 be divided equally between the garage company and the receiver.

Apparently no evidence was offered by the receiver to sustain the averments of his petition, nor was there any evidence offered by the garage company to sustain the averments of its answer to the petition, nor any evidence offered on the hearing of the receiver's report of sale; but from a reading of the briefs it seems to be assumed by both sides that the averments of the verified petition filed by the receiver and the averments of the garage company's answer were true, and for the purpose of this decision we shall assume this to be the fact.

In this court the only contention made by counsel for the garage company is that the "Ambassador Garage Company is entitled to the garageman's lien on the car for storage charges and the car should not have been sold except subject to such lien or the lien discharged by payment from the proceeds of such sale." And in support of this, counsel rely upon par. 45, ch. 82, Ill. State Bar Stats. 1935, which provides

that, "Every person, . . . who has . . . furnished storage for said chattel, at the request of its owner, . . . or authorized agent of the owner, . . . shall have a lien upon such chattel beginning on the date of the commencement of . . . such storage . . . for the reasonable worth of . . . such storage." And the argument is that the $355 received for the automobile should have been decreed to the garage company, and counsel say, "It has never been the law that a receiver can store goods with a garageman and then defeat the right of such garageman to a lien under the statute by asserting a claim upon the chattel in favor of himself as receiver. No such exception or limitation on the lien is created by the statute." Moreover, counsel says that this court in its opinion filed in case No. 37,831, before mentioned, expressly stated that the garage company "had and still has a superior lien on the car for its storage"; and that "there was at all times available for the presentation of its claim the Circuit court which appointed the receiver."

We think this contention cannot be sustained. This court when it used the language above quoted in case No. 37.831, was not considering the question whether the receiver's claim for fees and disbursements should be paid out of the proceeds of the sale before any payment should be made to the garage company. That question was in no way involved or considered. We think that where a receiver for an automobile is appointed, as in the instant case, and he takes possession of it, his costs and a reasonable allowance for his services must first be paid before the garageman's lien is paid, provided he performs his duties efficiently.

In 1 Clarke on Receivers (2nd ed.) page 912, sec. 646, the author says: "Claims and judgments should generally be paid in the order of preference, which may be generally stated as follows:

"*First.* Payment of court costs and payment to the receiver for his services in caring for the fund. The

services of the receiver will generally include a proper charge for legal services rendered to the receiver." *Knickerbocker v. McKindley Coal Co.,* 172 Ill. 535; *In re Hoffman v. A. Boynton,* 79 Rep. New Series, Chancery Division, Law Journal, 1910, p. 247; see also *Bauer v. Wilkes-Barre Light Co.,* 274 Pa. 165, 24 A. L. R. 1171; *Sloan & Zook Co. v. Lyons Refining Co.,* 290 Pa. 442.

No argument is made by counsel for the garage company that an allowance should not be made the receiver for his disbursements, or that the receiver should not be paid for his services because of any neglect on his part in the performance of his duties, so we do not feel it proper for us to consider this question. But we think we ought to say the record discloses that the receiver was derelict in the performance of his duties. He obtained no authority from the court to pay the annual premium of $25 on his bond for a period of five years. The garage company was repeatedly sending him its bill for storage and yet he failed to bring the matter before the court so that he could receive instructions as to what should be done. As said in *Atkinson & Co. v. Aldrich-Clisbee Co.,* 248 Fed. 134, 135, 136, "Receivers are bound to use the utmost care not to contract bills which they will be unable to pay from the property in their hands. The existence of such bills throws on the receivers a heavy burden to exonerate themselves from personal liability therefor, and a still greater burden to establish a right to compensation. The court itself has a duty to see that persons who deal properly with its officers get their money."

The order of the circuit court of Cook county appealed from is affirmed.

*Order affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.